[Civ. No. 46947. Second Dist., Div. One. Aug. 25, 1976.]

ZURN ENGINEERS, Plaintiff and Appellant, v.
EAGLE STAR INSURANCE COMPANY, LTD.,
Defendant and Respondent.

**COUNSEL**

Monteleone & McCrory and Patrick J. Duffy for Plaintiff and Appellant.

Long & Levit and John B. Hook for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—The case at bench involves the bar of the statute of limitations of Insurance Code section 2071 requiring that an action on a fire or all risk policy of insurance be commenced within 12 months of the "inception of the loss." In particular, action of the trial court granting an insurer's motion for summary judgment must be tested by the meaning of the quoted phrase in the context of an all risk policy issued in "A.L.S. Contractor's Installation or Builder's Risk Form" where: (1) the policy specifically excludes from its coverage "loss or damage . . . caused by fault, defect, error or omission in design, plan or specifications"; (2) imposes a condition precedent to the insurer's liability requiring a verified proof of loss stating its cause; and (3) the insured reasonably maintained that damage to property for which it was responsible in the course of performance of a construction contract was due to a design deficiency, the loss from which was the responsibility of the third party, a public entity contracting for the construction, rather than due to a nonexcluded cause, and that contention was not disclaimed by the public entity.

We conclude that where the statute of limitations is, as required by Insurance Code section 2071, incorporated in an insurance policy, the phrase "inception of the loss" must be construed in light of the other provisions of the policy, and that so construed in the context of the policy and factual situation which is here involved, the phrase does not mean the time at which the physical event causing damage to property occurred. Rather, it must be construed as occurring no earlier than the point at which the insured's reasonable belief of the third party's responsibility for the loss by reason of an uninsured cause is countered by the third party's assertion that it is not responsible. Accordingly, we reverse a summary judgment granted the defendant insurer on the basis of the bar of the 12-month statute of limitations.

Because the matter arises on summary judgment for defendant, we recite the record accepting as true the factual matter in plaintiff's declaration while drawing all permissible inferences in plaintiff's favor.

Plaintiff, Zurn Engineers, entered into a contract with the City of Palo Alto obligating Zurn to construct a waste water treatment plant. The plan of construction included the installation of large diameter pipe. Risk of loss for property installed on the job, including the pipe, was with Zurn until the project was finally accepted by the city.

Zurn obtained an all risk extended coverage "fire" insurance policy from defendant Eagle Star Insurance Company. The policy conforms to the standards of Insurance Code section 2071. Subject to exceptions and exclusions stated in the policy, it insures property used by Zurn in construction of the waste treatment plant against all risk of "physical loss . . . or damage." Excluded from the scope of coverage is the cost of faulty workmanship and "loss or damage directly or indirectly caused by fault, defect, error or omission in design, plan or specifications."[1]

The printed portion of the policy jacket requires that "the insured shall give written notice to [the insurer] of any loss without unnecessary delay, protect the property from further damage . . . and within 60 days after the loss, unless such time is extended in writing by [the insurer], . . . shall render to [the insurer] a [verified] proof of loss . . . stating the knowledge and belief of the insured as to the following: the time and origin of the loss . . . ."

A separate section of the printed jacket provides that loss covered by the policy is payable 60 days after proof of loss is received and "ascertainment of the loss is made." The printed form states further: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court . . . unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss." A typed portion of the policy states: "In the event of loss or damage the assured shall: . . . (c) as soon thereafter as is practicable render a statement to the company signed and sworn to by the assured stating the knowledge and belief of the assured as to the time and cause of the loss or damage . . . ."[2]

Zurn Engineers commenced work under the contract with Palo Alto. When over half of the job had been completed, it was discovered, on March 23, 1972, that a portion of the pipelines which were part of the job had settled so that pipes had become disconnected. Zurn and representa-

---

[1]This court granted respondent permission to augment its oral argument by supplemental letter. In the letter, respondent's counsel, by ignoring the quoted exclusion and quoting a different segment of the policy, argues that loss from design defect is not excluded by any policy language. Giving counsel the benefit of the doubt, we assume the omission to be the result of neglect rather than an attempt to mislead the court.

[2]Respondent's supplemental letter quotes the printed language of the policy without mention of the typed portion and argues that the policy does not require that the insured state the cause of the loss. With a somewhat greater effort than incident to footnote 1, we again give counsel the benefit of the doubt, treating the misstatement as the product of neglect rather than deceit.

tives of Palo Alto engaged in a series of discussions and correspondence to determine who was responsible for the damage to the pipe and who would pay for its repair. It was Zurn's position that the settling and damage was due to the pipe being laid in unstable soil, a condition of which Zurn had warned Palo Alto, and to a design defect in the coupling of the pipe. Palo Alto originally took the position that the settling and damage to the pipe was due to inadequate compaction of backfill of material surrounding the pipe.

Pending resolution of the question of cause of the damage to the pipe, Zurn Engineers and Palo Alto agreed to take necessary action to place the treatment plant in operation as soon as possible. A question arose concerning the release of impounded funds to Zurn. Soil tests were made. On August 2, 1972, Palo Alto issued its change order No. 29 authorizing Zurn to "furnish materials, manpower and equipment to replace unstable soil under major plant pipelines and to repair pipeline damage created by unstable soils conditions." Change order No. 29 increases the amount payable to Zurn Engineers by the original contract by cost of the new work plus 15 percent.

On August 24, 1972, Zurn wrote to Palo Alto stating that "for information purposes only," it was Zurn's position that the damage was caused by a design defect in the pipeline for which the general contractor should not be held responsible. Zurn repaired the pipeline break and was paid routinely under its contract with Palo Alto to the beginning of 1973. Further payment was questioned by a letter from Palo Alto to Zurn on April 13, 1973. By August 14, 1973, the Zurn-Palo Alto situation had deteriorated to communication between their respective lawyers. On that date, Palo Alto took the position that Zurn was responsible for loss caused by the settling of the pipe and that the amount of the loss was in excess of $600,000.

On September 6, 1973, approximately three weeks after the letter from counsel for Palo Alto, Zurn Engineers filed a "Statement of Loss" with Eagle Star Insurance Company. The statement reports that the loss occurred "[o]n or about August 14, 1973," and estimates the amount of damage as in excess of $600,000. It describes the cause of loss as "the failure to design sufficient foundational support for certain underground pipelines, causing said pipelines to settle, deform, and open at the joints, after said pipelines were installed in accordance with plans and specifications."

Eagle Star denied Zurn's claim for reimbursement, and on April 22, 1974, 25 months after the damage to the pipeline was discovered, almost 13 months after the letter from Palo Alto questioning further payment to Zurn, and about 9 months after the letter from Palo Alto's counsel definitively charging Zurn with the loss, Zurn filed the case at bench claiming reimbursement pursuant to its policy from Eagle Star.

Eagle Star answered Zurn's complaint asserting the bar of the 12-month statute of limitations of Insurance Code section 2071 as an affirmative defense. Eagle Star moved for summary judgment on its affirmative defense while Zurn moved for partial summary judgment that the affirmative defense be deemed not established. The trial court granted Eagle Star's motion and denied that of Zurn. Zurn appealed from the resulting judgment and from the order denying its own motion.

We note preliminarily that the order denying Zurn's motion for partial summary judgment is not appealable. That portion of Zurn's appeal must thus be dismissed. There remains for our consideration only the propriety of trial court action granting Eagle Star's motion which is at issue on appeal from the judgment.

The propriety of the trial court action must be tested by the meaning to be given "inception of the loss," the event which commences the running of the 12-month statute of limitations provided by Insurance Code section 2071 and incorporated by reason of that section in the policy at issue in the case at bench. The decisional law of other jurisdictions is in sharp disagreement on the interpretation of the phrase. (See *Fireman's Fund Ins. Co.* v. *Sand Lake Lounge, Inc.* (Alaska 1973) 514 P.2d 223, 224-226.)

Some jurisdictions adopt a very strict construction holding that it is the occurrence of the physical event causing the loss that is the loss inception. (See e.g., *Margulies* v. *Quaker City Fire & Marine Ins. Co.* (1950) 276 App.Div. 695 [97 N.Y.S.2d 100]; *Thames Realty Corp.* v. *Massachusetts F. & M. Ins. Co.* (1959) 170 Misc.2d 747 [184 N.Y.S.2d 170]; *J. N. Futia Co.* v. *National Surety Corporation* (1968) 30 App. Div.2d 989 [294 N.Y.S.2d 74]; *First National Bank* v. *Boston Insurance Co.* (1958) 17 Ill.App.2d 159 [149 N.E.2d 420]; *Naghten* v. *Maryland Casualty Co.* (1964) 47 Ill.App.2d 74 [197 N.E.2d 489, 24 A.L.R.3d 1001]; *Ramsey* v. *Home Insurance Co.* (1962) 203 Va. 502 [125 S.E.2d 201, 95 A.L.R.2d 1019]; *Stansbury* v. *Smith* (Ky. 1968) 424 S.W.2d 571;

*Gremillion* v. *Travelers Indemnity Company* (1970) 256 La. 974 [240 So.2d 727]; *P.O.P. Construction Co.* v. *State Farm Fire & Cas. Co.* (La. 1976) 328 So.2d 105; *McGuire* v. *Continental Insurance Company* (1972) 39 Mich.App. 612 [197 N.W.2d 846].)

Other jurisdictions apply a much more liberal interpretation construing "inception of the loss" generally in terms equating the phrase with accrual of a cause of action against the insurer. (See e.g., *Olson Marine Suppliers* v. *Fidelity-Phenix Fire Ins. Co.* (S.D.N.Y. 1950) 94 F.Supp. 726; *Westchester Fire Insurance Company* v. *Sperling* (9th Cir. 1970) 421 F.2d 141; *Shamrock Homebuilders, Inc.* v. *Cherokee Ins. Co.* (1971) 225 Tenn. 236 [466 S.W.2d 204]; *Fireman's Fund Ins. Co.* v. *Sand Lake Lounge, Inc.* (Alaska 1973) *supra,* 514 P.2d 223; *Avis* v. *Hartford Fire Insurance Company* (1973) 283 N.C. 142 [195 S.E.2d 545].)

California does not follow the strict rule of construction of the phrase "inception of the loss." Rather, our law requires that the policy be read as a whole so that, if the right to sue upon an insurance policy is postponed by action that must be taken by the insured as a prerequisite to suit, the limitation period does not commence to run until the insured has an opportunity to comply with the conditions precedent to litigation. (*Case* v. *Sun Insurance Co.* (1890) 83 Cal. 473 [23 P. 534]; see also *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 516-517 [6 Cal.Rptr. 924]; but cf. *Fitzpatrick* v. *N.A. Accident Ins. Co.* (1912) 18 Cal.App. 264 [123 P. 209].)

Because the case at bench reaches us on summary judgment, we must examine the record to determine whether as a matter of law it establishes that Zurn's right to sue on the policy issued by Eagle Star was not postponed to a point terminating within 12 months of the time Zurn's complaint was filed. The record does not.

The policy imposes a condition precedent to Eagle Star's obligation in the form of a proof of claim by the insured which must state under oath the cause of the loss or damage. Immediately after the damage to the pipe, Zurn was asserting that the cause of the damage was defective design and specifications, a cause of loss excluded by the policy language. Zurn's position was advantageous not only to it but also to Eagle Star because if Zurn prevailed, then all liability for the loss would be born by Palo Alto and Eagle Star would not be liable under its policy of insurance. So long as Zurn asserted its position against Palo Alto, it

could not consistently make the required statement under oath of loss from an insured cause which was a condition precedent to Eagle Star's liability on the policy. On very similar facts, a Tennessee court, applying the rule of liberal construction to "occurrence" commencing the running of the period of limitations, has held that the occurrence causing the insured loss was deferred until the insured's maintenance of his position seeking to attach liability to a third party upon a theory of loss not covered by the policy proved unavailing. (*Shamrock Homebuilders, Inc.* v. *Cherokee Ins. Co.* (Tenn. 1971) *supra*, 466 S.W.2d 204.)

The approach of the Tennessee case makes sense. Ours is not a business requiring an effort to increase volume. So long as the insurer is not prejudiced, there are sound considerations of policy in avoiding a rule which will require the insured to file a lawsuit which may prove unnecessary.

■ We thus conclude that "inception of the loss," as the phrase is used in Insurance Code section 2071, means the point after a physical loss has occurred when the insured has had a reasonable opportunity to comply with conditions precedent to suit upon the policy in the form of notice to the insurer and the filing of a proof of loss covered by the policy.

■ Here the record does not establish as a matter of law that the critical point was reached more than 12 months prior to the time that the action was filed. Conceivably, the evidence at trial may establish that sometime prior to 12 months of the date the complaint was filed Zurn was informed of Palo Alto's position of lack of design or specification defects in a fashion which no longer rendered reasonable its failure to assert the inconsistent position of cause of loss against Palo Alto on the one hand and Eagle Star on the other. The correspondence of April 1973, is some indication of the possibility. That matter, however, is one for determination at trial and not on this motion for summary judgment.

The judgment is reversed. Zurn's appeal from the order denying its motion for summary judgment is dismissed. Appellant Zurn Engineers is to recover its costs on appeal.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied September 14, 1976, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied October 21, 1976. Richardson, J., was of the opinion that the petition should be granted.