**Edward STINSON, Donna Stinson, and General Accident Insurance Company, a corporation, Plaintiffs,**

**v.**

**HOME INSURANCE COMPANY, a corporation, Defendant.**

**No. C–87–3031 RFP.**

United States District Court, N.D. California.

May 16, 1988.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PECKHAM, Chief Judge.

## I. INTRODUCTION

The parties have filed cross motions for summary judgment in this insurance coverage dispute. The parties seek a declaration of their respective rights under the insurance policy Home Insurance Company ("Home") issued on the Stinsons' Los Altos Hills home. In addition, plaintiffs allege that Home breached its duty of good faith to the Stinsons in denying coverage.

## II. DECISION

The Court grants defendant Home's motion for summary judgment. The Court finds that Home is not obligated to the Stinsons for payment under the policy, and is not obligated to pay any sums in contribution to General Accident Insurance Company. Plaintiffs' contract and contribution claims are barred by the one year limitation of actions clause in the policy contract. Plaintiffs' apparent claim for breach of the covenant of good faith and fair dealing is untenable because plaintiffs have failed to allege or demonstrate facts to support the claim.

## III. UNDISPUTED FACTS

Defendant Home issued a homeowner's all-risk policy on the Stinsons' Los Altos Hills home that was in effect from August 25, 1972 until August 25, 1978. A similar policy written by General Accident Insurance Company ("GAIC") covered the property from the cut-off date until August 25, 1986. Both policies contained clauses excluding property damage related to surface or subsurface water and earth movement, including settling and earthquake.

The Stinsons purchased their Los Altos Hills home in 1972. At that time, there was evidence that the house had been damaged by settling. The purchasers inquired about the possibility of further damage and the danger of landslide. Over the next few years, the Stinsons noticed more problems

Andrew P. Sclar, Burton J. Francis, Ericksen, Arbuthnot, Paynter, & Brown, San Francisco, Cal., for plaintiffs.

Clarke B. Holland, Patrick J. Bailey, Thornton, Taylor & Downs, San Francisco, Cal., for defendant.

with the house, including tile cracking and doors sticking or hanging unevenly.

In 1984, the Stinsons decided that the damage was more than normal wear and tear. They reported their claim to their insurance broker, Ellis & Stich, who submitted it to GAIC in February 1985. In October 1985, the broker also reported the claim to Home. Home responded by sending the Stinsons a "non-waiver" agreement indicating that the company would be sharing investigation expenses with GAIC and that it reserved its right to find that the claim was not covered.

Engineering surveys showed that several factors contributed to the damage: movement of the damp soil around the house (creep), settling, an inadequate drainage system, and a foundation that would be, according to one expert, inadequate under present engineering and construction standards. The Stinsons requested bids on the necessary work, and the parties have accepted a figure of $158,000 as the cost of repairing the property.

On October 9, 1986, Home wrote to the Stinsons denying any liability under the expired policy. In declining coverage, Home argued that (1) the loss was caused by an excluded peril, (2) the loss did not occur during the period the Home policy was in effect, (3) there was no "fortuitous" loss, and (4) the Stinsons failed to comply with policy conditions. The conditions the Stinsons allegedly failed to perform were the requirements, included in the policy, that policy holders file a proof of loss within sixty days of the loss, and that any action on the policy to recover a claim be brought within twelve months after inception of the loss.

Although GAIC did not make an explicit finding that the loss was covered, it settled with the Stinsons for $124,200. The Stinsons assigned all of their rights under the Home policy to GAIC under the settlement agreement.

## IV. DISCUSSION

### A. THE LIMITATION PERIOD.

■ The policy issued by Home on the Stinson's home provided that "no suit or action on this policy for the recovery of any claim shall be sustainable ... unless commenced within twelve months next after inception of the loss." Such a provision is valid and enforceable. Cal.Ins.Code §§ 2070, 2071; *Fageol Truck & Coach Co. v. Pacific Indemnity Co.*, 18 Cal.2d 748, 753, 117 P.2d 669, 672 (1941).

■ The question of when the "inception of the loss" occurred in this case is complex. For purposes of discussion, the Court will make the assumption most favorable to the plaintiffs: that the loss occurred on the last day of Home's policy period, or on August 25, 1978.

The Stinson claim to Home was not made until October 24, 1985, more than seven years after the date of loss presumed above and more than seven years after Home's policy was in force. This lawsuit was not filed until June 16, 1987, approximately nine years after the date of loss and expiration of the policy. In addition, the lawsuit was filed more than a year and a half after the Stinsons presented a claim to Home and more than two years after they presented their claim to GAIC.

Plaintiffs rely heavily upon *Zurn Engineers v. Eagle Star Ins. Co.*, 61 Cal.App.3d 493, 132 Cal.Rptr. 206 (1976), to support their argument that the "awareness" of a claim, and the opportunity to submit the claim to the insurance carrier, starts the twelve month period—not the physical event causing the loss. However, *Zurn* is distinguishable from the present case.

The policy involved in *Zurn* required that, as a condition precedent to filing a claim, the insured file a statement "signed and sworn by the assured stating the knowledge and belief of the assured as to the time and cause of the loss or damage." 61 Cal.App.3d at 496, 132 Cal.Rptr. 206. The claim involved an item of disputed work on a construction project, and the plaintiff engineering company initially argued that the project owner, a municipality, was responsible for repair costs. The city did not deny liability for eighteen months. Until that event, Zurn could not file the

sworn statement the policy required prior to accepting a claim.

When the insurance carrier denied coverage several months later, Zurn sued. The insurance company defendant on the basis of the policy's twelve month limitation on actions. The court held that under the particular facts involved, the suit was timely, since it was filed less than twelve months after Zurn was able to swear to the time and cause of the loss. *Id.* at 499–500, 132 Cal.Rptr. 206.

Here, in contrast, there is no evidence that anything prevented the Stinsons from bringing a claim within twelve months of the Home policy's termination.

Under some circumstances, the twelve month period will be tolled when the insured gives the insurance carrier notice of its claim, and will not begin to run again until the carrier denies coverage. 18A *Couch on Insurance* (2d ed. 1983) § 75:88 at 100. However, tolling is not applicable to the present situation. Here, the Stinsons did not initiate a claim until far more than twelve months after the Home policy's termination.

As plaintiffs argue, under California law, an insurer may be liable for damage that occurs on previously covered property after the policy has expired. When a court finds that continuing, progressive, deteriorating damage began with the term of the previous carrier's policy, the carrier may be held jointly and severally liable, with the current carrier, for the ensuing loss. *California Union Ins. Co. v. Landmark Ins. Co.,* 145 Cal.App.3d 462, 193 Cal.Rptr. 461 (1983); *Snapp v. State Farm Fire & Casualty Co.,* 206 Cal.App.2d 827, 24 Cal.Rptr. 44 (1962).

But the above principle does not change the result in the present case. The *California Union* and *Snapp* decisions cited by plaintiffs stand only for the proposition that an earlier insurer may remain liable for damage occurring after its policy period, so long as the damage began during the policy period; the cases do not address the effect of a contractual limitations period, and do not abrogate a provision that the insured must bring suit within one year of the inception of the loss.

■ Plaintiffs also contend that even if their claims are barred by the limitation of actions provision, Home has waived those defenses and is estopped from asserting them. Specifically, they claim that Home's "non-waiver" agreement, its participation in the investigation and its failure to inform the Stinsons of the twelve month period constitute waiver.

■ An insurer can waive its right to rely on policy provisions, including a limitation on actions. *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980); *Elliano v. Assurance Co. of America,* 3 Cal.App.3d 446, 83 Cal.Rptr. 509 (1970). However, the cases in which courts have found that carriers have waived these limitations involve situations where the carrier engaged in affirmative acts—such as promising to pay the claim or refusing to provide the insured with a copy of the policy that shows the twelve month bar—to induce the insured to delay filing suit beyond the limitations period. *Muraoka v. Budget Rent–A–Car,* 160 Cal.App.3d 107, 116, 206 Cal.Rptr. 476 (1984).

There is no evidence in the record that Home took any affirmative steps to deter the Stinsons from initiating suit within twelve months of the physical event causing loss. Neither the "non-waiver" agreement, nor Home's participation in the investigation, constitute waiver of the limitations period. 18A *Couch on Insurance* (2d ed. 1983) § 75:215 at 212.

Nor did Home in this situation have an obligation to advise the Stinsons that the limitations period could pose a problem. *See Becker v. State Farm Fire & Cas. Co.,* 664 F.Supp. 460 (N.D.Cal.1987).

In sum, the Court finds that the one year policy limitation period bars the Stinsons' claims against Home for payment under the policy, and any resulting claim for contribution by GAIC.

## B. PLAINTIFFS' BAD FAITH CLAIM.

■ In addition to their contribution claim under the contract, plaintiffs' complaint attempts to allege a claim for breach of the covenant of good faith and fair deal-

ing. Plaintiffs allege that "Home refused to participate in [the settlement] payment, wrongfully and in bad faith, denying any coverage obligation." Plaintiffs' Complaint for Declaratory Relief and Damages at 4. Plaintiffs stated no facts in their Complaint to support this allegation.

The Court finds that defendant is entitled to summary judgment on any alleged claim of bad faith.

■ Although plaintiffs need to provide only a "short and plain statement of the claim," the plaintiff does need to present facts to show that he is entitled to relief. Fed.R.Civ.P. 8; *Herzog and Straus v. GRT Corp.*, 553 F.2d 789 (2d Cir.1977). Here, plaintiffs did not provide any facts to support this claim. Where the claims in a complaint are insufficiently supported by factual allegation, the claims may be disposed of by summary dismissal. *Harper v. United States*, 423 F.Supp. 192, 196 (D.S.C. 1976).

In addition, although plaintiffs and defendant agree that there are no material facts in dispute and this case should be disposed of on summary judgment, plaintiffs have failed to move for summary judgment on the bad faith issue. Plaintiffs appear to virtually concede the bad faith issue.

Finally, the undisputed facts in this case do not appear to support plaintiffs' allegations of bad faith. Home participated in investigating the claim and determined (correctly, as the Court finds above) that it had no exposure. Given the prolonged time elapsed since the expiration date of the policy, it would be impossible for the Court to hold that as a matter of law Home acted in bad faith.

## C. COVERAGE ISSUES.

Given the disposition of this case on the grounds stated above, the Court need not reach the coverage issues raised by the parties.

IT IS SO ORDERED.