[No. S011415. Nov. 1, 1990.]

PRUDENTIAL-LMI COMMERCIAL INSURANCE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
RALPH E. LUNDBERG, as Trustee, etc., et al., Real Parties in
Interest.

## COUNSEL

Ramsay, Johnson & Klunder, William S. Loomis, Simon, Buckner & Haile, Stuart L. Brody and Alan G. Buckner for Petitioner.

Gibson, Dunn & Crutcher, John L. Endicott, Fred F. Gregory, Deborah A. Aiwasian, Horvitz & Levy, Barry R. Levy, Mitchell C. Tilner, Robie &

Matthai, James R. Robie, Pamela E. Dunn, Rogers, Joseph, O'Donnell & Quinn and Susan M. Popik as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Selwyn S. Berg for Real Parties in Interest.

Peter J. Kalis, Martin & Leaf and Ron Leaf as Amici Curiae on behalf of Real Parties in Interest.

---

**OPINION**

**LUCAS, C. J.**—Petitioner Prudential-LMI Commercial Insurance (Prudential) and real parties in interest (plaintiffs) each seek review of a Court of Appeal decision issuing a writ of mandate directing summary judgment in favor of Prudential. The action involves progressive property damage to an apartment house owned by plaintiffs and insured over the years by successive insurers, including Prudential. We granted review to address three issues: (i) when does the standard one-year limitation period (hereafter one-year suit provision) contained in all fire policies (pursuant to Ins. Code, § 2071)[1] begin to run in a progressive property damage case; (ii) should a rule of equitable tolling be imposed to postpone the running of the one-year suit provision from the date notice of loss is given to the insurer until formal denial of the claim; and (iii) when there are successive insurers, who is responsible for indemnifying the insured for a covered loss when the loss is not discovered until several years after it commences? The last issue can be resolved by placing responsibility on (a) the insurer insuring the risk at the time the damage began, (b) the insurer insuring the risk at the time the damage manifested itself, or (c) all insurers on the risk, under an allocation (or exposure) theory of recovery.

As explained below, we hold that the one-year suit provision begins to run on the date of inception of the loss, defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. We also hold that this limitation period should be equitably tolled from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing. In addition, we conclude that in a first party property damage case (i.e., one involving no third party liability claims), the carrier

---

[1] All further statutory references are to the Insurance Code unless otherwise noted.

insuring the property at the time of manifestation of property damage is solely responsible for indemnification once coverage is found to exist.

As we explain further below, we emphasize that our holding is limited in application to the first party progressive property loss cases in the context of a homeowners insurance policy. As we recognized in *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 405-408 [257 Cal.Rptr. 292, 770 P.2d 704], there are substantial analytical differences between first party property policies and third party liability policies. (*Ibid.*) Accordingly, we intimate no view as to the application of our decision in either the third party liability or commercial liability (including toxic tort) context.

### BACKGROUND

#### 1. *The Policy*

Plaintiffs, as trustees of a family trust, built an apartment house in 1970-1971 and insured it with four successive fire and extended coverage property insurers between 1971 and 1986. Prudential insured the risk between October 27, 1977, and October 27, 1980. It issued an all-risk homeowners policy which insured against "ALL RISKS OF DIRECT PHYSICAL LOSS except as hereinafter excluded." The policy insured for both property loss and liability.

As noted above, we are concerned here only with the first party property loss portion of plaintiffs' policy. It insured against all risks of direct physical loss subject to the terms and conditions set forth in the policy, which provided definitions and general policy provisions explaining to the insured the coverages and exclusions of the policy. The specified exclusions included loss "caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, mudflow, earth sinking, rising or shifting; unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss."

The policy contained several standard provisions adopted from the "California Standard Form Fire Insurance Policy" and section 2071, entitled "Requirements in case loss occurs." The provisions in relevant part required the insured to: "give written notice . . . without unnecessary delay, protect the property from further damage . . . and within 60 days after the loss, unless such time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, [and] the interest of the insured and all others in the property . . . ." In the same section of the policy, the

provision entitled "When loss payable" required the insurer to pay the amount of loss for which the company may be liable "60 days after proof of loss . . . is received by this company and ascertainment of the loss is made whether by agreement between the insured and this company expressed in writing or by the filing with this company of an award as [otherwise provided in the policy—i.e., pursuant to the policy arbitration and appraisal provisions]."

Plaintiffs' policy also contained the standard one-year suit provision first adopted by the Legislature in 1909 as part of the "California Standard Form Fire Insurance Policy." (See §§ 2070, 2071.) It provided: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss."[2] With this background in mind, we turn to the facts underlying this claim.

## 2. *The Facts*

While replacing the floor covering in an apartment unit in November 1985, plaintiffs discovered an extensive crack in the foundation and floor slab of the building. In December 1985, they filed a claim with their brokers, who immediately notified Prudential and the other companies that had issued insurance policies on the property during plaintiffs' period of ownership. Prudential conducted an investigation of the claim, which included an examination under oath of plaintiffs in February 1987. Prudential concluded the crack was caused by expansive soil that caused stress, rupturing the foundation of the building. In August 1987, shortly before receiving formal written notice that their claim had been denied under the policy's earth movement exclusion,[3] plaintiffs sued Prudential, the three other insur-

---

[2] We note plaintiffs' policy contained an additional provision termed "SUIT OR ACTION AGAINST THE COMPANY." That provision read: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve (12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute of the state wherein this policy is issued." This modified version of the standard one-year suit provision is incorporated into many policy forms currently in use and recognizes that some states have adopted two-year limitation periods. (Cal. Insurance Law and Practice (Matthew Bender 1989) § 36.67, "Suit Against Us" at pp. 64-65.) We perceive no legal difference between "inception" and "happening" for purposes of resolving the questions presented.

[3] Whether the loss was the result of a covered peril was not a ground of the petitions for review, nor was it argued or adequately briefed in either the Court of Appeal or this court. Accordingly, we do not address material coverage issues, leaving causation to be determined in the appropriate forum. (See *Garvey* v. *State Farm Fire & Casualty Co.*, *supra*, 48 Cal.3d 395, 406.)

ers that had insured the property between 1971 and 1986, and their insurance brokers or agents, alleging theories of breach of contract, bad faith, breach of fiduciary duties and negligence.

Prudential sought summary judgment and, alternatively, summary adjudication of 16 issues arising out of the complaint, contending there was no evidence any loss was suffered during its policy period and hence it could not be required to indemnify plaintiffs. Prudential observed that carpeting had been installed in 1982, covering the area later damaged, but asserted that at the time of installation (nearly two years after Prudential's coverage had ended), plaintiffs observed no damage or evidence of cracking. Prudential also claimed that because plaintiffs filed suit 20 months after filing their claim, the action was barred by the standard one-year suit provision contained in its policy, pursuant to section 2071.

The court denied the motion in its entirety, stating that triable issues existed as to whether the earth movement exclusion applied, whether the damage occurred during the policy period, and when the crack first appeared. Prudential sought a writ of mandate to review the denial of the motion, arguing only that the action was time-barred because plaintiffs failed to comply with the policy's notice-of-claim requirement and one-year suit provision.

The Court of Appeal issued a peremptory writ of mandate directing the trial court to vacate its order denying the insurer's summary judgment motion and to enter another order granting the relief requested. In so holding, the court adopted a "delayed discovery" rule: The one-year suit provision begins to run when damage to property is sufficient to put a reasonable person on notice of the possibility of property loss. It determined that a delayed discovery rule must be applied to the policy requirement that a claim be made without unnecessary delay. The court explained that to rule otherwise would require claimants to pursue their rights under the policy even if still "blamelessly ignorant" of the objective facts underlying the claim. (See also, e.g., *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 827 [195 Cal.Rptr. 421] [delayed discovery rule applied in breach of contract suit when cause of action concealed by defendant].)

Thus, the policy requirement of notice of loss without unnecessary delay, and the further provision calling for the commencement of suit within 12 months from the "inception of the loss," were relaxed in cases of continuous and progressive loss by the application of a delayed discovery rule. The court based its reasoning on the fact that progressive property loss can occur and cause damage long before its discovery by the insured.

After adopting the delayed discovery rule, however, the Court of Appeal held that plaintiffs were nonetheless too late in filing their action under the one-year suit provision. The court explained that although factual issues remained unresolved as to whether plaintiffs' failure to earlier discover the damage to the property was reasonable, the issue need not be resolved because plaintiffs failed to bring their action on the policy within the limitations period of 12 months after "a reasonable person" would have been placed on notice of property damage.

Next, the Court of Appeal noted that in property cases involving progressive loss, the period over which the damage took place may have occurred within one or several policy periods. The court reasoned that because it is often difficult to detect progressive property loss and such damage may occur over several policy periods without detection, equity demands an apportionment of damages between those insurers on the risk during the entire period the damage progressed. The court discussed two cases we examine further below: *Home Ins. Co.* v. *Landmark Ins. Co.* (1988) 205 Cal.App.3d 1388 [253 Cal.Rptr. 277] (*Home Ins. Co.*), and *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462 [193 Cal.Rptr. 461] (*California Union Ins. Co.*). As stated above, both plaintiffs and Prudential seek review on the one-year suit provision and successive insurer issues. We begin by discussing section 2071, the delayed discovery principle announced by the Court of Appeal, and application of the doctrine of equitable tolling to the limitations period.

## DISCUSSION

1. *Section 2071: One-year Suit Provision—History of the Limitations Period*

Under California law, all fire insurance policies must be on a standard form and, except for specified exceptions, may not contain additions thereto. (§ 2070.) This standard form provides that no suit or action for recovery of any claim shall be sustainable unless commenced within 12 months after the "inception of the loss." (§ 2071.) Section 2071 was adopted by the Legislature in 1909 (with a 15-month suit provision) as part of the "California Standard Form Fire Insurance Policy." The provision was amended in 1949 to reflect the nearly uniform adoption (by 45 states at the time) of a 1-year limitations period in the "Model New York Standard Fire Form Policy." (Sen. Bill No. 1282 (1949 Reg. Sess.); see Sen. Insurance Com. Rep. to Governor (May 24, 1949).)

The one-year suit provision was first adopted by the New York Legislature (in 1887 and again in 1918) to prevent fraudulent fire claims. (*Proc* v.

*Home Ins. Co.* (1966) 17 N.Y.2d 239, 243 [270 N.Y.S.2d 412, 217 N.E.2d 136] (*Proc*); see ABA Insurance Law Section, Annot. of 1943 N.Y. Standard Fire Insurance Policy (1953) p. 152.) It provided that an action on the policy must be commenced " 'within twelve months next after the fire.' " (*Proc, supra* 17 N.Y.2d at p. 243.) The provision was subsequently "interpreted to mean that the period of limitations ran from the date of the fire, in consequence of which the insured was compelled to satisfy all conditions precedent as well as institute suit within the same 12-month period." (*Ibid.*) Thereafter, as insurance coverage was expanded to cover more than fire (e.g., theft, lightning and other property damage), the New York provision was broadened in 1943 by replacement of the phrase "after the fire" with the words "after inception of the loss." (*Id.* at p. 244.) The standard policy language was subsequently adopted by the majority of state legislatures, including California's. (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 402 [154 P.2d 399] (*Bollinger*); see *Peloso* v. *Hartford Fire Insurance Co.* (1970) 56 N.J. 514 [267 A.2d 498, 501-501].)

California's version of the model New York policy, section 2071, has remained substantially unchanged since its amendment in 1949. The only significant modification occurred in the 1988 adoption of section 2070.1, which requires insurance companies to notify insureds, in writing, at least 30 days before expiration of the one-year suit provision, of the statute's applicability to the insured's claim in corrosive soil loss cases. Under section 2070.1, failure to provide such written notice results in an automatic tolling of the limitations period of 30 days from the date the written notice is actually provided. Section 2071.1 also provides that notice of the statute of limitations is not necessary if the insured is represented by an attorney. The provision is applicable only to corrosive soil loss claims presented and not denied prior to January 1, 1989, and to claims presented on or after that date.

■ The validity of the statutory limitations period was discussed in *C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1064 [211 Cal.Rptr. 765] (*C & H Foods*), a case involving loss by fire. *C & H Foods* held, "Such a provision has long been recognized as valid in California. As is stated in *Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753 [117 P.2d 669], regarding a policy provision requiring action to be commenced within 12 months after the happening of the loss: 'Such a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation.' " Both *C & H Foods* and

*Fageol* upheld the limitations period after acknowledging the traditional rule of statutory construction.

■ When a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature. (*Jensen* v. *Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 794 [345 P.2d 1].) In addition, the statute must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer (unlike ambiguous or uncertain policy language). (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal.App.3d 652, 656 [172 Cal.Rptr. 263]; *Ichthys, Inc.* v. *Guarantee Ins. Co.* (1967) 249 Cal.App.2d 555, 558 [57 Cal.Rptr. 734].) With this history in mind, we consider how to define the inception of a loss for purposes of triggering section 2071 when the loss occurs some time before any damage is discovered by the insured.

### 2. *Delayed Discovery and Inception of the Loss*

■ The purpose of a statute of limitations is " 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " (*Bollinger, supra,* 25 Cal.2d at pp. 406-407, quoting *Order of Railroad Telegraphers* v. *Railway Express Agency* (1944) 321 U.S. 342, 348 [88 L.Ed. 788, 792, 64 S.Ct. 582].)

Although the concept of a standard policy was intended to provide policyholders with a clear indication of their duties under the policy, courts have not uniformly agreed when the limitation period begins to run in cases involving property damage not discovered until years after damage actually occurs. All courts recognize, however, that determination of when the statute of limitations period commences depends on the interpretation of the phrase "inception of the loss" in section 2071.

Some courts, strictly construing "inception of the loss," define it as the occurrence of the physical event causing the loss. (See Annot., Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action (1966) 6 A.L.R.3d 1197; Annot., Property Insurance: Insured's Ignorance of Loss or Casualty, etc. (1969) 24 A.L.R.3d 1007.) As observed in *Naghten* v. *Maryland Casualty Company* (1964) 47 Ill.App.2d 74 [197 N.E.2d 489, 24 A.L.R.3d 1001]: "We realize that ascertainment of a loss which has resulted from a progressive latent condition is more difficult than the immediately obvious results of a fire. We do not believe, however, that

the time of discovery of the loss can be left completely to the whimsy of the insured." (197 N.E.2d at p. 490.) The *Naghten* court affirmed dismissal of the insured's suit because the insured had failed to bring suit within one year of the time the loss actually occurred.

California courts have more leniently interpreted the provision in property loss cases not involving fire. In *Zurn Engineers* v. *Eagle Star Ins. Co.* (1976) 61 Cal.App.3d 493 [132 Cal.Rptr. 206] (*Zurn*), the court explained that a strict construction of the term "inception of the loss" for purposes of triggering the limitation period of section 2071 (e.g., that it is the actual occurrence of the physical event causing the loss), should not be followed in this state. The *Zurn* court summarized California law as follows: "California does not follow the strict rule of construction of the phrase 'inception of the loss.' Rather, our law requires that the policy be read as a whole so that, if the right to sue upon an insurance policy is postponed by action that must be taken by the insured as a prerequisite to suit, the limitation period does not commence to run until the insured has an opportunity to comply with the conditions precedent to litigation." (61 Cal.App.3d at p. 499.) The court found that the limitation period was tolled when the insured was unable to file a proof of loss under oath because it was asserting a claim against a third party that was inconsistent with its own first party coverage. (*Ibid.*)

As the present Court of Appeal observed, the *Zurn* court confined its holding to the context of the policy and factual situation in that case. (*Zurn, supra*, 61 Cal.App.3d at p. 495.) Indeed, *Zurn* involved a lengthy dispute with a third party (that had apparently contracted with the insured for the work leading to the claimed loss) about which party would pay for the damage resulting from the work. Nonetheless, we find instructive *Zurn*'s recognition that a strict construction of the term "inception of the loss" may lead to an inequitable technical forfeiture of insurance coverage. (*Ibid.*)

Several first party cases have acknowledged support for a delayed discovery rule that holds an insured responsible for initiating a claim based on the date on which the insured could reasonably have concluded his property suffered a loss. These cases agree that the term "inception of the loss" means that point in time at which appreciable damage occurs so that a reasonable insured would be on notice of a potentially insured loss. For example, in *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319], the insured received a soils report in 1983 revealing defects in his property dating back to the creation of the lot before he purchased it in 1968. Nevertheless, the insured failed to submit a notice of loss to his insurer within one year of receiving the report. In holding his action against the insurer was time-barred under section 2071, the court found unmeritorious the insured's contention he did not discover his cause

of action until he consulted his attorney in 1985 and acquired the specialized knowledge needed to determine the cause of the damage to his home. (*Lawrence, supra,* 204 Cal.App.3d at p. 573.)

Next, in *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 534 [252 Cal.Rptr. 565] (*Abari*), an absentee landlord sued his property insurer for coverage five years after discovering cracks in the walls, driveway, counter, and fireplace of the home he owned. The insured filed the complaint for breach of contract and bad faith two days after filing proof of loss. The insurer demurred on the ground that the action was barred by the one-year suit provision, arguing that the insured's status as an absentee landlord until 1984 should not toll accrual. (*Id.* at p. 535.)

The *Abari* court ruled in favor of the insurer. The court emphasized that in first party property loss cases, it is the occurrence of some cognizable event rather than knowledge of its legal significance that triggers the insured's notice duties under the policy. The court believed that the insured reasonably could have found the cracks so trivial that he would not have been alerted to the gravity of the damage. (*Abari, supra,* 205 Cal.App.3d at p. 535.) Nonetheless, the insured's complaint lacked any allegation showing his delayed notice was reasonable; instead the insured "merely pled he discovered the cracks in 1979; the cracks worsened over time; and upon reentering the property in 1984, he observed further damage." (*Ibid.*) The court upheld the demurrer after rejecting the insured's argument that the one-year suit provision did not apply because the action sought recovery for bad faith. The court explained that because the insured alleged he was damaged in an amount equal to the benefits payable under the policy, "his bad faith and unfair practices claims are an apparent attempt to recover *on the policy,* notwithstanding his failure to commence suit within one year of accrual." (205 Cal.App.3d at p. 536.)[4]

■ We agree that "inception of the loss" should be determined by reference to reasonable discovery of the loss and not necessarily turn on the occurrence of the physical event causing the loss. Accordingly, we find that California law supports the application of the following delayed discovery rule for purposes of the accrual of a cause of action under section 2071: The insured's suit on the policy will be deemed timely if it is filed within one

---

[4]Similarly, in applying California law, the United States District Court for the Northern District of California upheld a strict application of the one-year suit provision in a homeowners policy to bar the insured's suit against the insurer where there was no evidence the insureds were prevented from timely bringing their claim within twelve months of the policy's termination. (*Stinson v. Home Ins. Co.* (N.D.Cal. 1988) 690 F.Supp. 882, 884-885.) The *Stinson* court observed that the insureds had noticed appreciable soil subsidence for several years both before and after the applicable policy period commenced, and hence concluded that the suit was time-barred because it was filed 12 months after the policy had expired. (*Ibid.*)

year after "inception of the loss," defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. To take advantage of the benefits of a delayed discovery rule, however, the insured is required to be diligent in the face of discovered facts. The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify his insurer of the loss promptly and diligently. (See, e.g., *April Enterprises, Inc.* v. *KTTV*, *supra*, 147 Cal.App.3d 805, 833 [generally question of fact whether reasonable diligence has been exercised in discovering claim].)

▪ Determining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact. The insured's unreasonableness in delaying notification of the loss until a particular point in time may be raised as a separate affirmative defense by an insurer in response to a complaint by the insured for recovery of benefits under the policy. The insurer has the burden of proving those allegations by a preponderance of the evidence. (See, e.g., *Olson* v. *Standard Marine Ins. Co.* (1952) 109 Cal.App.2d 130, 137 [240 P.2d 379].)

In this case, plaintiffs' policy required notice of loss to be given "without unnecessary delay," and proof of loss to be filed within 60 days of the loss. A factual question remains as to the properly calculated accrual date under the delayed discovery principles announced above. Plaintiffs therefore should be allowed to amend their complaint to allege facts showing their discovery of the loss was reasonable.

### 3. *Doctrine of Equitable Tolling*

Our inquiry does not end with adoption of a delayed discovery rule. After filing their notice of loss, plaintiffs waited more than 18 months to file the present action. Thus, even under our delayed discovery rule, the one-year suit provision would, unless otherwise inapplicable or excused, bar plaintiffs from pursuing the present action. The seemingly anomalous conclusion—that an insured must file a lawsuit before the insurer has completed its investigation and denied the claim—has been questioned in other jurisdictions that have the identical statutory scheme as California.

Two divergent views have developed. Several state courts have strictly interpreted the standard limitation clauses. (*Naghten* v. *Maryland Casualty Company*, *supra*, 197 N.E.2d at pp. 490-492 [dismissed claim, for loss

caused by pressure of underground water, based on one-year suit provision in homeowner's policy]; *Proc, supra,* 17 N.Y.2d 239 [12-month period "after inception of loss" is measured from date of loss]; *Williams Studio* v. *Nationwide Mutual* (1988) 38 Pa.Super. 1 [550 A.2d 1333, 1335] [same].)

Other state courts have devised rules to equitably toll the limitation period until an insurer's formal denial of the claim by the insured. The leading case for this view is *Peloso* v. *Hartford Fire Insurance Co., supra,* 267 A.2d 498 (*Peloso*), involving an action by an insured seeking recovery for fire damage to his home. The policy contained a one-year suit provision identical to the one contained in plaintiffs' policy here.

The facts of *Peloso* illustrate the anomalous result that would follow a literal interpretation of the one-year suit provision. The insured's building and its contents sustained damage from a fire on the premises, and he gave the insurer prompt notice of the fire. The insurer denied the claim nine months after the loss, but the insured waited approximately nine more months before instituting suit for coverage under the policy. He argued his suit was timely because the statute of limitations did not begin to run until liability was formally denied. After the trial court granted the insurer's summary judgment motion on the one-year suit provision, the New Jersey Supreme Court reversed, holding that the "fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined." (*Peloso, supra,* 267 A.2d at p. 501.)

The *Peloso* court recognized that although the limitation period purports to provide the insured with one year in which to institute suit, other policy provisions greatly affect what occurs during this period. As *Peloso* observed, "the central idea of the limitation provision was that an insured [had] 12 months to commence suit." (267 A.2d at p. 501.) Thus, *Peloso* reasoned that "the period during which an insured's right to bring suit is postponed is for the benefit of the company so that it can pursue its statutory and contractual rights. Accordingly, it ought not to be charged against the insured's time to bring suit." (*Ibid.*)

Other states have followed *Peloso*'s lead. (See, e.g., *Ford Motor Co.* v. *Lumbermens Mut. Cas. Co.* (1982) 413 Mich. 22 [319 N.W.2d 320] [12-month limitation period tolled from notice of loss to formal denial of claim]; *Clark* v. *Truck Ins. Exchange* (1979) 95 Nev. 544 [598 P.2d 628] [12-month limitation period in fire loss runs from date of fire, but is tolled from date of notice to date of formal denial of liability]; *Tom Thomas Organization* v. *Reliance Ins. Co.* (1976) 396 Mich. 588 [242 N.W.2d 396] [same tolling rule].)

In addition, as the parties observe, a few states have enacted statutes that expressly extend the one-year limitation provision. New York recently extended its suit provision to twenty-four months. (N.Y. Ins. Law § 168 (McKinney Supp. 1982-1983).) Illinois enacted a statutory tolling provision that states: "Whenever any policy or contract for insurance . . . contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." (Ill. Rev. Stat. ch. 73, ¶ 755.1; see also Mass. Ann. Laws ch. 175, § 22 (1977) [limitation period runs two years from time cause of action accrues]; Me. Rev. Stat. Ann. tit. 24-A, § 2433 (1969) [two years from time cause of action accrues against foreign insurers]; see Reader & Polk, *The One-Year Suit Limitation In Fire Insurance Policies: Challenges and Counterpunches* (Fall 1983) 19 Forum 24, 26-28.)

Early California cases took inconsistent approaches to the issue. (Compare *Case* v. *Sun Insurance Co.* (1890) 83 Cal. 473 [23 P. 534] [period tolled based on facts], with *Tebbets* v. *Fidelity & Casualty Co.* (1909) 155 Cal. 137 [99 P. 501] [claims and limitations requirements operate independently].) We relied on the doctrine of equitable tolling together with procedural defaults by the insurer to suspend the operation of the one-year suit provision in *Bollinger, supra*, 25 Cal.2d 399. There, the insured had filed one lawsuit, which was dismissed as premature because the insurer had not yet acted, and then filed a second suit after the one-year limitations period had run and after the insurer denied coverage. Under such circumstances, we suggested, the insurer had a duty, arising from its obligation of good faith to the insured, to inform the insured of its intention to rely on a technical defense that would otherwise result in forfeiture of policy benefits. (*Id.* at pp. 410-411.)

More recent cases have applied the equitable doctrines of waiver and estoppel to allow a suit filed after the limitation period expired to proceed. ██ It is settled law that a waiver exists whenever an insurer intentionally relinquishes its right to rely on the limitations provision. (*Elliano* v. *Assurance Co. of America* (1970) 3 Cal.App.3d 446, 452-453 [83 Cal.Rptr. 509] (*Elliano*) [insurer who waived formal proof of loss estopped to claim time bar under 12-month limitation provision by (1) accepting written estimate of loss without requesting formal proof from insured, (2) delivering copy of policy to insured without noting limitations period, and (3) attempting to negotiate compromise well after 12-month period expired]; *Sheetz* v. *IMT Ins. Co.* (Iowa 1982) 324 N.W.2d 302, 305 [waiver where insurer continued negotiations for settlement of fire loss after limitation period]; *Lally* v. *Allstate Ins. Co.* (S.D.Cal. 1989) 724 F.Supp. 760, 763 [same].) An estoppel "arises as a result of some conduct by the defendant, relied on by

the plaintiff, which induces the belated filing of the action." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 523, p. 550.) According to Witkin, "[t]he estoppel cases appear to fall roughly into three classes: (1) Where the plaintiff is aware of his cause of action and the identity of the wrongdoer, but the latter by affirmative acts induces the plaintiff to refrain from suit. (2) Where the plaintiff is unaware of his cause of action and his ignorance is due to false representations by the defendant. (3) Where the plaintiff is unaware of the identity of the wrongdoer and this is due to fraudulent concealment by the defendant." (*Ibid.*)

For example, if the insurer expressly extends the one-year suit provision during its claim investigation, the insurer waives its right to raise a timeliness defense to the insured's action.[5] (*Elliano, supra,* 3 Cal.App.3d at pp. 452-453.) Similarly, an insurer that leads its insured to believe that an amicable adjustment of the claim will be made, thus delaying the insured's suit, will be estopped from asserting a limitation defense. (See, e.g., *Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346, 350 [159 P.2d 24]; *Lagomarsino v. San Jose etc. Title Ins. Co.* (1960) 178 Cal.App.2d 455, 462 [3 Cal.Rptr. 80].)

By contrast, equitable tolling has most often been applied in California when the plaintiff first files a claim before an administrative agency and then files a second proceeding after the limitation period has expired. Under these circumstances, courts have held the policy underlying the statute of limitations—prompt notice to permit complete and adequate defense—has been satisfied and that the period should be tolled in equity to preserve the plaintiff's claim. (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 926 [191 Cal.Rptr. 681] [filing of worker compensation claim tolls period for filing pension disability claim]; see also *Addison v. State of California* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941] [running of six-month limitation period of Gov. Code, § 945.6 tolled while plaintiff's action pending in federal court].)

One commentator has called it "unconscionable" to permit the limitation period to run while the insured is pursuing its rights in the claims process. (18A Couch, Insurance (2d ed. 1983) § 75:88, at pp. 99-100.) Couch also observes that some jurisdictions have tolled the limitation period until the expiration of the 60-day waiting period following the filing of formal proofs of loss. (*Id.*, § 75:91, at p. 106.) This approach effectively allows the insured

---

[5] As amicus curiae observe, however, similar conduct by the insurer *after* the limitation period has run—such as failing to cite the limitation provision when it denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense—cannot, as a matter of law, amount to a waiver or estoppel. (See, e.g., *Becker v. State Farm Fire and Cas. Co.* (N.D.Cal. 1987) 664 F.Supp. 460, 461-462.)

an additional two months, or a total of fourteen months, to bring his lawsuit.

Another commentator has suggested that insurers be required to give special notice to insured claimants of the running of the limitation period during the claims process. (20A Appleman, Insurance Law and Practice (1980) § 11601, pp. 435-436.) Appleman notes that, as a practical matter, the insured is usually unaware of and would not reasonably expect such a short limitation period to run while his insurer is still examining the claim. (*Ibid.*)

■ Like the *Peloso* court, we conclude the Legislature's intent to provide insureds with a full year (excluding the tolled period) in which to commence suit can be inferred from the fact that the period provided by section 2071 is considerably shorter than the usual four years for ordinary contracts (Code Civ. Proc., § 337) and ten years for an action against developers for property damage caused by latent defects. (*Id.*, § 337.15; *Peloso, supra,* 267 A.2d 498 at p. 501.) We find *Peloso*'s reasoning consistent with the trend in other states toward equitable tolling of the one-year suit provision in the limited circumstances in which the insurer (or other party against whom the claim has been made) has received timely notice of the loss and thus is able to investigate the claim without suffering prejudice.

### 4. Policy Considerations

Persuasive policy considerations support equitable tolling of the limitations period: Prudential suggests that suspension of the one-year suit provision during the time the insurer investigates the loss will frustrate the provision's primary purpose of preventing the revival of stale claims. (See *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 417-418 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839].) But as stated in *Bollinger, supra,* "Originally the shortened limitation periods were inserted into policies by insurers. Some courts declared such provisions void as against public policy while other courts enforced them in order to protect freedom of contract. (See cases collected, 41 Yale L.J. 1069-1075.)" (25 Cal.2d at p. 407.) We emphasized in *Bollinger* that the purpose of a shortened limitation period was to obtain the advantage of an early trial of the matters in dispute and to make more certain and convenient the production of evidence on which the rights of the parties depended, and not to achieve a technical forfeiture of the insured's rights by enforcing the limitation provision when the insured has given timely notice of a claim to his insurer. (*Id.* at pp. 408-410.) We do not believe that an equitable tolling of the one-year limitation period will frustrate the purpose of section 2071, or work a hardship on the insurer, whose investigation will necessarily have preceded the denial of coverage.

Moreover, the principle of equitable tolling presents several advantages in eliminating the unfair results that often occur in progressive property damage cases. First, it allows the claims process to function effectively, instead of requiring the insured to file suit *before* the claim has been investigated and determined by the insurer. Next, it protects the reasonable expectations of the insured by requiring the insurer to investigate the claim without later invoking a technical rule that often results in an unfair forfeiture of policy benefits. Although an insurer is not required to pay a claim that is not covered or to advise its insureds concerning what legal arguments to make, good faith and fair dealing require an insurer to investigate claims diligently before denying liability. (See, e.g., *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 56-57 [221 Cal.Rptr. 171].) Third, a doctrine of equitable tolling will further our policy of encouraging settlement between insurers and insureds, and will discourage unnecessary bad faith suits that are often the only recourse for indemnity if the insurer denies coverage after the limitation period has expired. (See *Abari, supra,* 205 Cal.App.3d 530, 536 [rule that one-year suit provision does not apply to bad faith suits inapplicable when insured's bad faith action is "transparent attempt to recover *on the policy,* notwithstanding his failure to commence suit within one year of accrual"], original italics.)

Equitable tolling is also consistent with the policies underlying the claim and limitation periods—e.g., the insurer is entitled to receive prompt notice of a claim and the insured is penalized for waiting too long after discovery to make a claim. For example, if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month to file his action after the claim is denied before it is time-barred under section 2071. (See e.g., *Peloso, supra,* 267 A.2d at p. 502.)

Finally, the anomaly caused by a literal application of the one-year suit provision is demonstrated by the facts of this case. Plaintiffs allege they notified Prudential of their loss in December 1985, one month after it was discovered. Assuming this delayed discovery was reasonable, they then had 60 days to file a proof of loss and Prudential had another 60 days to determine liability under the policy. During this time, any suit on the policy filed by plaintiffs would have been premature. (See *Bollinger, supra,* 25 Cal.2d at p. 403.) Negotiations apparently continued until January 1987, when plaintiffs assertedly received a letter from Prudential proposing that coverage would be denied based on the earth movement exclusion unless the insureds had any additional information that would favor coverage. At this point, plaintiffs sought counsel who contacted Prudential. In February 1987, Prudential requested that plaintiffs submit to an examination under oath pursuant to policy terms. It was not until September 1987, that plaintiffs' claim was denied unequivocally. Thus, if the one-year suit provision

were literally applied, plaintiff's suit would have been untimely before the insurer denied coverage.

We conclude that proper resolution of the foregoing anomaly is to allow the one-year suit provision of section 2071 to run from the date of "inception of the loss," as defined above, but to toll it from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied. As *Peloso, supra,* 267 A.2d 498, observed, "[i]n this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit." (*Id.* at pp. 501-502.) We agree with *Peloso* that such an approach to the limitation provision is more easily applied than the concepts of waiver and estoppel in the many different fact patterns that may arise. (*Id.* at p. 502.)

In the present case, plaintiffs allege that approximately one month had elapsed between the date the loss was discovered and the date notice thereof was given to Prudential. As stated above, we conclude plaintiffs should be allowed to amend their complaint to allege facts showing their action was filed within one year of their delayed discovery of the loss. If, on remand, it is determined that the delayed discovery of the loss was reasonable, the one-year suit provision would be tolled from December 1985 until September 1987, when plaintiffs were notified by Prudential that coverage was denied. Plaintiffs would then have had 11 months to institute suit against Prudential, so that any suit filed before September 1988 would be considered timely.

### 5. *Progressive Loss Rule*

We next examine allocation of indemnity between successive first party property insurers when the loss is continuous and progressive throughout successive policy periods, but is not discovered until it becomes appreciable, for a reasonable insured to be aware that his notification duty under the policy has been triggered. Although the Court of Appeal here held that plaintiffs' claim was time-barred under section 2071, it observed in dictum that apportionment of damages between all insurers who insured the risk during the time of the development of the injury would be the "equitable result." The court based its reasoning on a line of cases applying the "continuous exposure theory" of loss allocation, which apportions payment between those insurers whose policies insured the risk during the

period from the date when damage first occurred to the date of its discovery by the insured.[6]

The foregoing theory was first announced in the context of a third party construction defect case (*Gruol Construction Co.* v. *Insurance Co. of North America* (1974) 11 Wn.App. 632 [524 P.2d 427]), and more recently found application in cases involving asbestos-related bodily injury. (*Ins. Co. North America* v. *Forty-Eight Insulations* (6th Cir. 1980) 633 F.2d 1212; *Keene Corp.* v. *Ins. Co. of North America* (1981) 667 F.2d 1034 [215 App.D.C. 156].) In 1983, the Court of Appeal relied on these cases to conclude that apportionment of liability among successive insurers was the only equitable method for determining which carrier should pay in a third party property damage case, when the loss (leakage from a swimming pool) continued over two separate policy periods. (*California Union Ins. Co., supra*, 145 Cal.App.3d 462.)

Prudential argues that even assuming the applicable one-year suit provision does not bar the suit, it should not be responsible for any covered loss because plaintiffs presented no evidence that a loss was suffered during the period of its policy term (Oct. 27, 1977, to Oct. 27, 1980). It also asserts that because its policy period ended in 1980—five years before the damage was allegedly discovered by plaintiffs—it should not be responsible for indemnification of *any* covered loss. Prudential asks the court to adopt a "manifestation rule" of property coverage that fixes liability for first party property losses solely on the insurer whose policy was in force at the time the progressive damage became appreciable or "manifest." (See *Home Ins. Co., supra*, 205 Cal.App.3d 1388.) In discussing both the manifestation and continuous exposure theories, we keep in mind the important distinction that must be made in a causation analysis between first party property damage cases and third party liability cases. (*Garvey* v. *State Farm Fire & Casualty Co., supra*, 48 Cal.3d 395 at p. 406.)

### The Manifestation and Exposure Theories

The first case to discuss a manifestation theory in the first party property context was *Snapp* v. *State Farm Fire & Cas. Co.* (1962) 206 Cal.App.2d 827, 831-832 [24 Cal.Rptr. 44] (*Snapp*). The *Snapp* court was called on to resolve the insurer's contention that its homeowners policy did not cover a

---

[6] Amici curiae Mid-America Legal Foundation, Pfizer, Inc., W. R. Grace & Co., Keene Corp., McKesson Corp., GenCorp, and Rheem Manufacturing Co., have filed a request for judicial notice pursuant to Evidence Code sections 452, subdivision (d), and 459. The request involves several briefs and other supporting papers filed on behalf of different parties in various stages of litigation in different state and federal courts. Because we do not find the information necessary to our decision, we deny the request.

loss to the insured residence resulting from the movement of unstable fill. The homeowners policy was written by State Farm for a three-year term commencing in 1956 and consisted of the "California Standard Form Fire Insurance Policy" and an endorsement extending the coverage to insure against property loss. (*Id.* at p. 829.)

The loss "materialized" and thus became "ascertainable" during State Farm's policy period and continued to progress after the policy term expired. (*Snapp, supra,* 206 Cal.App.3d at p. 831.) State Farm first argued that because the instability of the fill made the resulting earth movement "inevitable," the loss was not a "fortuitous" event, and hence not covered under the policy. (*Id.* at p. 830.) State Farm relied, in part, on sections 22 and 250, which codify the "loss-in-progress rule" and provide that an insurance contract indemnifies only against contingent or unknown events (§ 22), and any such contingent or unknown event may be insured against subject to the limitations of the Insurance Code (§ 250).[7]

The court rejected this argument, however, and held that although the loss may have been "inevitable," such inevitability did not alter the fact that "at the time the contract of insurance was entered into, the event was only a *contingency* or *risk* that might or might not occur within the term of the policy." (*Snapp, supra,* 206 Cal.App.2d at p. 830, italics in original.)

State Farm next asserted that even assuming it was responsible for the loss, its liability became "terminable" on the date its policy expired and therefore it was not liable for the "continuing damage or loss" after expiration. (*Snapp, supra,* 206 Cal.App.2d at p. 831.) In rejecting State Farm's argument, the *Snapp* court noted that the question of whether the insurer was liable for the loss was a legal rather than factual issue. (*Ibid.*) The court held, "[t]o permit the insurer to terminate its liability while the fortuitous peril which materialized during the term of the policy was still active would not be in accord either with applicable precedents or with the common understanding of the nature and purpose of insurance; it would allow an injustice to be worked upon the insured by defeating the very substance of the protection for which his premiums were paid." (*Ibid.*) Thus the court determined, "[o]nce the contingent event insured against has occurred during the period covered, the liability of the carrier becomes *contractual*

---

[7]The loss-in-progress rule codifies a fundamental principle of insurance law that an insurer cannot insure against a loss that is known or apparent to the insured. (See *Bartholomew* v. *Appalachian Ins. Co.* (1st Cir. 1981) 655 F.2d 27, 28-29.) The public policy rule is premised on the view that: To hold the insurer liable for a progressive and continuing property loss that was discovered before the carrier insured the risk "would be to impose upon the insurer a guaranty of the good quality of the [property insured] . . . ., which liability under the policy the insurer had not assumed." (*Greene* v. *Cheetham* (2d Cir. 1961) 293 F.2d 933, 937.)

rather than *potential* only, and the sole issue remaining is the extent of its obligation, and it is immaterial that this may not be fully ascertained at the end of the policy period." (*Id.* at p. 832.) The court concluded the date of "materialization" of a loss determines which carrier must provide indemnity for a loss suffered by the insured, and the carrier insuring the risk at the time the damage is first discovered is liable for the entire loss. (206 Cal.App.2d 827, 831-832.)

Next, in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 25 [27 Cal.Rptr. 689, 377 P.2d 889] (*Sabella*), the insurer claimed that damage to the insured's residence was not fortuitous and thus not covered because "the damage occurred as a result of the operation of forces inherent" in the underlying soil conditions (including uncompacted fill and defective workmanship in the installation of a sewer outflow that ultimately broke). *Sabella* rejected the insurer's contention that the loss was "not fortuitous and hence not a 'risk' properly the subject of insurance." (*Id.* at p. 34.) Relying on *Snapp, supra,* 206 Cal.App.2d 827, *Sabella* held that even if it were inevitable that the damage would have occurred at some time during ownership of the house, the loss was covered because such loss was a contingency or risk at the time the parties entered into the policy. (*Sabella, supra,* 59 Cal.2d 21 at p. 34; see also *Bartholomew* v. *Ins. Co. of North America* (D.R.I., 1980) 502 F.Supp. 246, affd. *sub nom. Bartholomew* v. *Appalachian Ins. Co., supra,* 655 F.2d 27 [insurer on risk at time defect is discovered is responsible for loss]; accord *Appalachian Ins. Co.* v. *Liberty Mut. Ins. Co.* (3d Cir. 1982) 676 F.2d 56.)

The next California case to address the problems arising in progressive property damage cases presented the issue of which carrier should indemnify insureds for a loss that occurred over two separate policy periods. In *California Union Ins. Co., supra,* 145 Cal.App.3d 462, a third party liability insurance case, the insureds installed a swimming pool during Landmark Insurance Company's policy period. The pipes to the pool (and possibly the pool itself) began to leak during Landmark's policy period and continued to leak during the term of the subsequent insurer, California Union. Repairs which the parties believed corrected the leakage were made during Landmark's policy term. Nonetheless, because the underlying cause of the damage had not been discovered, the repairs were ineffective and additional damage occurred after California Union insured the risk.

Because the case involved liability policies, the Court of Appeal relied on three out-of-state liability cases that had apportioned payment between successive insurers when the damage or injury had continued during the separate policy periods. One case involved construction damage (*Gruol Construction Co.* v. *Insurance Co. of North America, supra,* 11 Wn.App. 632 [524 P.2d 427]), and the others involved asbestos-related bodily injury (*Ins.*

*Co. of North America* v. *Forty-Eight Insulations, supra,* 633 F.2d 1212; *Keene Corp.* v. *Ins. Co. of North America, supra,* 667 F.2d 1034).

The *California Union Ins. Co.* court determined that it was faced with a "one occurrence" case, involving continuous, progressive and deteriorating damage, notwithstanding the fact that new damage occurred to the pool after certain repairs had been made (*California Union Ins. Co., supra,* 145 Cal.App.3d 462, 468-474), and held both insurers jointly and severally liable for the damages (*id.* at p. 476). It reasoned that in a third party liability case "involving continuous, progressive and deteriorating damage," the carrier insuring the risk when the damage first becomes apparent remains responsible for indemnifying the loss until the damage is complete, notwithstanding a policy provision which purports to limit coverage to losses occurring within the parameters of the policy term. (*Ibid.*; see Hook, *Multiple Policy Period Losses and Liability Under First Party Policies* (1985) Tort & Ins. L.J. 393, 395 [hereafter Hook].)

In *Home Ins. Co., supra,* 205 Cal.App.3d 1388, the sole issue was "which of two first party insurers is liable for the loss from continuing property damage manifested during successive policy periods." (*Id.* at p. 1390.)[8] Home insured the Hotel del Coronado against property damage for the period September 1, 1980, through October 1, 1986. The concrete facade of portions of the structure "first began to visibly manifest deterioration in the form of . . . 'spalling' (cracking and chipping)" in or about December of 1980. (*Id.* at p. 1391.) The spalling continued after it was first discovered by the insured and became progressively worse over time, extending through the expiration of Home's coverage and the inception of the Landmark policy. Although the damage was initially discovered in the first of the two policy periods, and continued through both policy periods, apparently it was impossible to determine the extent of damage occurring during each period, and thus the amount of coverage owed by each insurer could not be determined. In a subsequent declaratory relief action, the trial court determined that under the manifestation and loss-in-progress rules, Home was solely at risk. (*Id.* at p. 1392.)

The Court of Appeal affirmed, holding that the "date of manifestation determines which carrier must provide indemnity for a loss suffered by its

---

[8] *Home Ins. Co., supra,* 205 Cal.App.3d 1388, was decided before *Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d 395, 406, and thus did not distinguish between policy language used in the first or third party context. As noted by the present Court of Appeal (the same court that decided *Home Ins. Co.*), the distinction is an important one. The Court of Appeal herein thus noted that *Home Ins. Co.* must be limited to its facts because, in failing to distinguish between first and third party issues, it was admittedly "not a case for all purposes." (See *Home Ins. Co., supra,* 205 Cal.App.3d at p. 1394, fn. 3.)

insured." (*Home Ins. Co.*, *supra*, 205 Cal.App.3d at p. 1392.) The court rejected Home's reliance on *California Union Ins. Co.*, *supra*, 145 Cal.App.3d 462, for the proposition that the loss-in-progress rule is inapplicable to claims for continuing and progressive property damage. As the *Home Ins. Co.* court observed, *California Union Ins. Co.*, *supra*, had been "based on the exposure theory . . . commonly used in asbestos bodily injury cases (see *Ins. Co. of North America* v. *Forty-Eight Insulations* (6th Cir. 1980) 633 F.2d 1212 . . . . Common sense tells us that property damage cases, even those involving continuous damage such as the one before us, differ from asbestos bodily injury cases where injury is immediate, cumulative and exacerbated by repeated exposure. We believe the rationale for apportioning liability in the asbestos cases is not a basis to deviate from settled principles of law." (*Home Ins. Co.*, *supra*, 205 Cal.App.3d at pp. 1394-1395.) Thus, the *Home Ins. Co.* court reasoned, *California Union Ins. Co.* should not be applied to the property damage case before the court. (*Id.* at p. 1395.) Accordingly, the court held that "as between two first-party insurers, one of which is on the risk on the date of first manifestation of property damage, and the other on the risk after the date of the first manifestation of damage, the first insurer must pay the entire claim." (*Id.* at p. 1393.)

Because *California Union Ins. Co., supra,* 145 Cal.App.3d 462, addressed a third party liability question, its analysis necessarily differed in many respects from the one we undertake here. As one court observed, in first party cases applying the rule finding coverage only on actual occurrence of injury, no damage or injury of any kind has taken place until manifestation; the cause instead lies dormant until it later causes appreciable injury. (*Ins. Co. of North America* v. *Forty-Eight Insulations, supra,* 633 F.2d 1212, 1222, fn. 18.) By contrast, when damages slowly accumulate, the exposure theory should apply. (*Ibid.*) As Hook observes, "The issue of continuous and progressive losses has not arisen frequently in the context of first party cases (perhaps because homeowner's policies were [originally drafted] to cover only sudden damage such as fire and windstorm, and not gradual damage such as settlement)." (Hook, *supra*, Tort & Ins. L. J. at p. 398.) Other commentators have warned against confusing first and third party issues. "Applying the terminology that has grown up around bodily injury [liability] insurance coverage cases in the context of coverage for property damage implies that the considerations are identical and obscures the real differences between the two types of problems." (Arness & Eliason, *Insurance Coverage for "Property Damage" in Asbestos and Other Toxic Tort Cases* (1986) 72 Va.L.Rev. 943, 973, fn. 108.) Accordingly, and because the issue of whether an allocation or exposure theory should apply in the third party property damage liability context is not before the court, we leave its resolution to another date.

As stated by the *Home Ins. Co.* court, the manifestation rule in the first party context "promotes certainty in the insurance industry and allows insurers to gauge premiums with greater accuracy. Presumably this should reduce costs for consumers because insurers will be able to set aside proper reserves for well-defined coverages and avoid increasing such reserves to cover potential financial losses caused by uncertainty in the definition of coverage." (*Home Ins. Co.*, *supra*, 205 Cal.App.3d at pp. 1395-1396.)

Based on the reasoning set forth in *Snapp*, *Sabella* and *Home Ins. Co.*, we conclude that in first party progressive property loss cases, when, as in the present case, the loss occurs over several policy periods and is not discovered until several years after it commences, the manifestation rule applies. As stated above, prior to the manifestation of damage, the loss is still a contingency under the policy and the insured has not suffered a compensable loss. (*Snapp*, *supra*, 206 Cal.App.2d at pp. 831-832.) Once the loss is manifested, however, the risk is no longer contingent; rather, an event has occurred that triggers indemnity unless such event is specifically excluded under the policy terms. Correspondingly, in conformity with the loss-in-progress rule, insurers whose policy terms commence after initial manifestation of the loss are not responsible for any potential claim relating to the previously discovered and manifested loss. Under this rule, the reasonable expectations of the insureds are met because they look to their present carrier for coverage. At the same time, the underwriting practices of the insurer can be made predictable because the insurer is not liable for a loss once its contract with the insured ends unless the manifestation of loss occurred during its contract term. (*Id.* at p. 832.)

One final question must be addressed regarding the application of a manifestation rule of coverage in progressive loss cases: how does the rule relate to our rules of delayed discovery and equitable tolling announced above? We have previously defined the term "inception of the loss" as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. We conclude that the definition of "manifestation of the loss" must be the same. Under this standard, the date of manifestation and hence the date of inception of the loss will, in many cases, be an issue of fact for the jury to decide. When, however, the evidence supports only one conclusion, summary judgment may be appropriate. For example, when the undisputed evidence establishes that no damage had been discovered before a given date (i.e., no manifestation occurred), then insurers whose policies expired prior to that date could not be liable for the loss and would be entitled to summary judgment. The litigation can then be narrowed to include only the insurers whose policies were in effect when the damage became manifest.

## CONCLUSION

 Based on the principles discussed above, we conclude plaintiffs should be allowed to amend their complaint to allege that their delayed discovery of the loss at issue was reasonable, and that they timely notified Prudential of the loss without unnecessary delay following its manifestation. If it is found that plaintiffs' delayed discovery of the loss was reasonable, then the rule of equitable tolling would operate to toll the one-year suit provision from the date the insured filed a timely notice of loss to Prudential's formal denial of coverage. Whether Prudential must then indemnify plaintiffs for any covered claim under the policy necessarily depends on whether that insurer was the carrier of record on the date of manifestation of the loss. Although it appears from the present record that manifestation of loss occurred in November 1985, after Prudential's policy had expired, we note that plaintiffs have joined other insurers in the litigation. Therefore, in the absence of conclusive evidence, we decline to speculate concerning the date manifestation of loss occurred. The decision of the Court of Appeal is reversed and the cause remanded for proceedings consistent with our opinion.

Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

On December 13, 1990, the opinion was modified to read as printed above.