Filed 8/26/15  Wessler v. Mid-Century Ins. Co. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD WESSLER et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>       Defendant and Respondent. | A142928<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC1300846) |

Richard Wessler (Richard) and Theresa Wessler (Theresa; collectively, the Wesslers) purchased a homeowner's insurance policy from Mid-Century Insurance Company (Mid-Century).  The policy included a one-year statute of limitations period for any challenge to the insurer's handling of a claim.  The Wesslers' home was seriously damaged by a fire and, more than one year after Mid-Century had denied their claim for damage, the Wesslers sued Mid-Century for breach of contract.  The Wesslers alleged in their pleading that the statute of limitations was tolled while a criminal investigation of them was pending.  The trial court granted Mid-Century's motion for summary judgment and the Wesslers appeal.  We reject the Wesslers' contention that the statute of limitations was suspended during the period of time they were being criminally investigated; thus, the statute of limitations bars the Wesslers' lawsuit against Mid-Century.  Accordingly, we affirm.

1

## BACKGROUND

The Wesslers, a married couple, owned property in Danville, California (the Danville home) since 2000. Richard, a general contractor, built the home and the Wesslers lived in the home until 2008. They permitted their friends, Timothy and Agnes Shelton (the Sheltons), to live in the home without paying rent.

On March 22, 2010, Mid-Century executed and delivered to the Wesslers a homeowner's policy (the policy), which was in effect from January 31, 2010, through January 31, 2011. The policy covered damage to the Danville home.

The policy provided that the claimants had various duties after a loss, including the obligation to make a list of damaged or destroyed personal property and to attach bills and/or records, and to cooperate with Mid-Century's investigation of the loss. The claimant also had the duty to do the following as often as Mid-Century reasonably required: provide records, documents, and other information requested, including "but not limited to banking records, asset, debt and income information, records and documents, credit history and other financial records . . . . [;]" submit to examinations under oath by Mid-Century and "[s]ubmission to a requested examination(s) under oath is a condition precedent to recovery under this policy[;]" and send within 60 days after Mid-Century's request, a signed sworn statement showing, among other things, all information requested to investigate the claim.[1]

Under the heading, "Suit Against Us," the policy read: "No suit or other action can be brought against us, our agents or our representatives unless there has been full compliance with all the terms of this policy, including submission to requested

---

[1] The policy under the heading of "Intentional Acts, Criminal Acts, and Fraud," excluded any coverage "for loss or damage from a criminal act committed by or at the direction of any insured if the loss that occurs may be reasonably expected to result from such an act, or is the intended result of such an act."

Elsewhere, under the heading "Misrepresentation, Concealment or Fraud," the policy stated: "We do not provide coverage for any loss or damage . . . if you or any insured has in connection with or related to any insurance provided in this policy intentionally caused or arranged for the loss or damage . . . while engaged in committing or concealing a felony . . . ."

examinations under oath. Suit on or arising out of the . . . [p]roperty [c]overage of this policy must be brought within one year after inception of the loss or damage."

On January 28, 2011, while the Sheltons were living in the Danville home, a fire started in the home's garage; it spread, and caused substantial damage to the home. The day after the fire, the Wesslers filed a claim with Mid-Century.

On February 4, 2011, Mid-Century's claims adjustor, Craig Perry, inspected the Danville home with a fire causation expert and an electrical engineer, Jeffrey Goode. Wessler was present but left when Perry told him he had some questions to ask him. The fire causation expert and Goode concluded that the fire originated where the electrical main service panel and wiring were located in the southwest corner of the garage. Goode concluded that "the evidence supports that three improper connectors, most probably used to tap power ahead of the meter, provided the ignition source for this fire."

On this same date, February 4, 2011, Perry wrote the Wesslers and stated that Mid-Century's investigation supported the conclusion "that three improper [splice] connectors, most probably used to tap power ahead of the meter, provided the ignition source of this fire." On this same date, Perry sent two additional letters asking the Wesslers to complete and sign an "Authorization to Obtain Information" (authorization form) and a "Proof of Loss" form. The Wesslers did not respond to either letter. Subsequently, on February 10 and February 28, 2011, Perry again sent the Wesslers letters requesting the completed forms. Perry also asked the Wesslers to agree to be interviewed. The Wesslers did not respond.

The San Ramon Valley Fire Protection District completed an amended incident report on March 2, 2011 (fire department report). The fire department report stated that the electrical wire and cable insulation were the items that first ignited. The factor contributing to the ignition was an electrical failure and malfunction and that a contributing factor was the "[m]isuse of material or product[.]" It noted that a "suppression factor" was an "illegal and clandestine drug operation[.]"

The fire department report further stated that law enforcement had notified the fire fighters at the Danville home "to keep [their] eyes open because [the police] suspected

3

the fire may have been used to cover up a crime." The fire captain discovered evidence of a possible illegal drug growing operation. The fire crew waited until the police obtained a search warrant and then assisted with investigating the cause and origin of the fire. The fire personnel and law enforcement found "[a] large number of high candlepower lights, burned plants, filters, fans, and hydroponics fluid containers . . . . The garage was lined with foam insulation . . . ."

On March 28, 2011, Perry sent the Wesslers a letter notifying them that Mid-Century had not received any response to the requests for further information and, consequently, it was closing their claim. The letter advised them about the one-year contractual limitations period applicable to any lawsuit arising out of the denial.

Counsel for the Wesslers notified Perry that the Wesslers were prepared to give a statement. A recorded interview of Richard occurred on April 27, 2011. Richard, who had legal representation, asserted his Fifth Amendment privilege whenever a question was asked relating to the police investigation, communications with the Sheltons, the marijuana growing operation, or the rewiring of the electrical connection. The Danville home had a hidden staircase leading to the attic and Richard denied any knowledge of it. He refused to sign the authorization form.

On May 3, 2011, Mid-Century wrote the Wesslers asking again for the forms and utility bills for the last six months. The letter again advised about the one-year statute of limitations.

In May 2011, Perry received a letter of representation for the Wesslers from attorney Ray Rockwell. Mid-Century brought in its counsel, Phaidra M. Garcia of the Law Offices of McDowell, Shaw & Colman.

On June 16, 2011, Garcia sent a letter to Rockwell regarding the Wesslers' claim. The letter confirmed the date for examining the Wesslers under oath. Prior to the examination scheduled for July 28, 2011, Garcia requested numerous documents including the following: tax forms documenting income from January 1, 2009, until the present date; credit card, debit card, and bank statements; and cellular telephone bills.

4

On July 28, 2011, the Wesslers appeared for their examination and refused to produce their financial records, bank records, and cell phones. Rockwell warned that the Wesslers would plead the Fifth Amendment in response to any question related to the criminal investigation. Rockwell stated that the Wesslers would cooperate once the criminal matter concluded. The Wesslers asserted their Fifth Amendment rights throughout their examinations. During the examinations, Garcia informed Rockwell about the one-year statute of limitations and he responded, "I'm well aware of the one year."

On July 29, 2011, Perry sent Rockwell a reminder that Mid-Century still had not received either the signed proof of loss or authorization forms. Perry did not receive a response and on September 29, 2011, he sent Rockwell a letter denying the Wesslers' claim; Perry explained the denial was due to the Wesslers' failure to cooperate. Perry reminded them of the one-year contractual statute of limitations and provided them with an additional 14 days from the date of the letter to submit the requested information.

Less than one year later, on April 4, 2012, Rockwell sent a letter to Mid-Century's counsel "strongly" suggesting that Mid-Century "advance the funds to secure" the Danville home, which was considered a hazard by the Town of Danville. Rockwell stated that the Wesslers would be filing a lawsuit regarding their claim. Garcia responded on behalf of Mid-Century on April 10, 2012. She reminded Rockwell that the Wesslers' claim had been denied on September 29, 2011, and therefore there would be "no coverage for the loss[,] which would include coverage to secure [the Danville home]." The letter repeated that the policy specified a one-year statute of limitations for filing a lawsuit regarding the handling of this claim.

A criminal complaint signed on January 10, 2012, and filed on December 17, 2012, charged Richard and the Sheltons for running a marijuana cultivation operation at the Danville home.[2] The complaint charged them with three felonies: cultivating marijuana (Health & Saf. Code, § 11358), controlling a place where marijuana is

---

[2] Theresa was not charged.

5

cultivated (*id.*, § 11366.5, subd. (a)), and recklessly and unlawfully causing a fire of a structure (Pen. Code, § 452, subd. (c)).

On January 10, 2013, Richard pled no contest to a misdemeanor for controlling a place where marijuana is grown (Health & Saf. Code, § 11366.5); the three original charges were dismissed.

On April 18, 2013, the Wesslers filed a complaint in the superior court for breach of contract and declaratory relief against Mid-Century based on its denial of their claim for the damage to the Danville home from the fire on January 28, 2011. They maintained that Mid-Century was obligated to pay their claim because the damage to their Danville home was covered and no exclusions applied. They alleged that they did not file their lawsuit within one year of the date Mid-Century denied their claim at the instruction of their counsel "because of the obvious concern that they would have to answer certain questions in the discovery process which could have been held against them in the criminal proceeding." They asserted that the statute of limitations should be tolled pursuant to the doctrine of equitable tolling until February 2013, when the criminal investigation concluded. They sought a declaration that Mid-Century had a duty to compensate the Wesslers for the loss resulting from the fire at their Danville home and damages for the alleged breach of the contract.

Mid-Century moved for summary judgment. After a hearing, the trial court filed its order on June 27, 2014, granting Mid-Century's motion for summary judgment. It observed that the statute of limitations was triggered when the loss occurred, which was January 28, 2011, but the contractual limitations period was equitably tolled until the claim was denied on September 29, 2011. The Wesslers filed their action more than 18 months after their claim had been denied.

The trial court addressed the Wesslers' argument that the statute of limitations was equitably tolled while the criminal case regarding Richard was pending. The court noted that the Wesslers cited no authority to support this argument. The court added: "The bigger problem is that Richard Wessler was not acquitted of the charges. It is undisputed that Richard Wessler pled no contest to a violation of [Health and Safety Code section

6

11366.5, subdivision (a)], knowingly allowing a premises to be used for storing and distributing a controlled substance." The court stated that the express terms of the policy excluded coverage even if the statute of limitations were not tolled.

The trial court also granted Mid-Century's summary judgment motion on the independent ground that the Wesslers failed to provide necessary information to determine if there was coverage. The court elaborated, "Failure or refusal to provide documents may result in forfeiture of any claim under the policy, as this requirement has been recognized as a condition precedent to filing suit."

Judgment was filed on July 28, 2014, and the Wesslers filed a timely notice of appeal.

## DISCUSSION

### I. *Standard of Review*

The standard of review of a summary judgment motion in favor of a defendant is well settled. We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law." (*Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 372.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the [plaintiff] in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The trial court must view that evidence, and any reasonable inferences from that evidence, "in the light most favorable to" the plaintiff. (*Id.* at p. 843.) We review the trial court's ruling de novo. (*Id.* at p. 860.)

### II. *Statute of Limitations*

"The purpose of a statute of limitations is ' "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and [that] the right to be free of stale claims in time comes to

7

prevail over the right to prosecute them." ' " (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 684 (*Prudential*).)

The homeowner's policy purchased by the Wesslers from Mid-Century plainly created a one-year statute of limitations when it provided that any claim or lawsuit "arising out of the" property coverage of the policy "must be brought within one year after inception of the loss or damage." Here, the fire damaging the Danville home occurred on January 28, 2011, and the Wesslers filed their claim for damage with Mid-Century the following day. The trial court correctly applied the holding of *Prudential, supra,* 51 Cal.3d 674 and tolled this contractual limitation period from the time of the fire until Mid-Century formally denied the Wesslers' claim in writing (*id.* at pp. 678, 693), which was September 29, 2011.

Tolling the period from January 29 until September 29, 2011, the statute of limitations period expired on September 29, 2012. The Wesslers filed their complaint on April 18, 2013, more than six months after the statute of limitations had lapsed.

The Wesslers acknowledge that their pleading was not filed within the statute of limitations period but maintain that the trial court should have "forgiven" them "for their technical non-compliance with the statute of limitations." The Wesslers contend that the court should have applied a second period of equitable tolling and suspended the statute of limitations while the criminal case against them was pending. They maintain that they should not have been forced to choose between asserting their Fifth Amendment rights and providing Mid-Century with all the requested information.

Equitable tolling is sparingly applied; it is a judge-made doctrine that suspends or extends a statute of limitations otherwise applicable "occasionally and in special situations . . . ." (*Addison v. State of California* (1978) 21 Cal.3d 313, 316 (*Addison*).) Whether the doctrine of equitable tolling should be applied involves a balancing of the competing interests of preventing the assertion of stale claims and allowing good faith litigants their day in court. (See *id.* at p. 319.)

"[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As

8

a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling even previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370-371, fn. omitted.) Plaintiff bears the burden of proving that the equitable tolling doctrine applies. (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 912.)

The Wesslers do not cite any court that has applied a second period of equitable tolling in the insurance context based on a criminal investigation of the claimant. They do, however, note that the statute of limitations for breach of contract claims is four years (Code Civ. Proc., § 337), and the Legislature provided insurance carriers with special treatment by permitting them to create a one-year contractual statute of limitations.

To the extent the Wesslers are suggesting that equitable tolling is justified because ordinary breach of contract claims are governed by a four-year statute of limitations, we reject this argument. The one-year statute of limitations in the policy for their Danville home satisfies the requirements under Insurance Code section 2071, subdivision (a). Under California law, all fire insurance policies must be on a standard form. (Ins. Code, § 2070.) This standard form provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 12 months next after inception of the loss." (Ins. Code, § 2071, subd. (a).) This one-year limitations period on insurance actions has " 'long been recognized as valid in California.' " (*Prudential, supra,* 51 Cal.3d at p. 683.) Thus, the one-year statute of limitations in the policy complied with the law. (See *id.* at p. 684 ["When a clause in an insurance policy is authorized by statute, it is deemed consistent with public policy as established by the Legislature"].)

The Wesslers assert that Mid-Century did not suffer prejudice by the delay and claim that "Mid-Century cannot argue evidence necessary to its coverage analysis has been lost." The Wesslers ignore that it is their burden to demonstrate that Mid-Century

suffered no prejudice; it is not Mid-Century's burden to show prejudice.[3]  To support its argument that Mid-Century suffered no prejudice the Wesslers point out that Mid-Century propounded no discovery prior to filing its summary judgment motion and conclude this showed that Mid-Century needed no further information from the Wesslers.  This argument is nonsensical.  Once Mid-Century rejected the Wesslers' claim based on their failure to cooperate and provide relevant information, it no longer had a need to continue to request this information.

Contrary to the Wesslers' conclusory argument, tolling the statute of limitations for the entire time a claimant is being investigated for committing a crime is clearly prejudicial to the insurance company.  Criminal investigations can take months or years.  Indeed, in the present case, the criminal charges against Richard were not filed until almost two years after the fire.  Thus, the Wesslers are urging this court to adopt a rule that permits the claimant to refuse to answer questions regarding the claim or to cooperate with the insurance company's investigation for an indefinite period of time.  Yet, " 'the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured . . . .' " (*Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, 529 (*Hickman*).)  The rule advocated by the Wesslers would prevent the insurance company from fulfilling its legal obligation to investigate claims promptly.  (See *Abdelhamid v. Fire Ins. Exchange* (2010) 182 Cal.App.4th 990, 1007 (*Abdelhamid*).)  Furthermore, tolling in this situation would defeat the entire purpose of Insurance Code section 2071, which "is to relieve insurance companies of the burden imposed by defending old, stale claims." (*Prudential, supra,* 51 Cal.3d at p. 684.)

---

[3]  The insurer has the burden of showing that it was prejudiced in its investigation when it claims the policy is void based on the insured's failure to submit to an under oath examination.  (See, e.g., *Brizuela v. CalFarm Ins. Co.* (2004) 116 Cal.App.4th 578, 591.)  However, as already noted, the party seeking to have the court apply the equitable doctrine has the burden of proof and therefore the Wesslers must demonstrate that Mid-Century was not prejudiced.  (*In re Marriage of Zimmerman, supra,* 183 Cal.App.4th at p. 912.)

*Abdelhamid* and *Hickman* are distinguishable, according to the Wesslers, because these cases involved arson and the present case did not involve arson; rather, the fire was an accident. The insurer's need to investigate to meet its legal obligation occurs in all cases; the investigation is not simply to determine whether there was arson. The insurer must determine whether the damage is covered, the amount of damage, and whether there is any evidence that the claim is fraudulent. (See, e.g., *Francis v. Iowa Nat'l. Fire Ins. Co.* (1931) 112, Cal.App. 565, 571 [purpose of requiring sworn proof of loss within *a limited time* after fire occurs is to protect insurer against fraudulent claims]; *Ram v. Infinity Select Ins.* (N.D. Cal. 2011) 807 F.Supp.2d 843, 857-859 [insurance company denied plaintiff's vehicle theft claim and the insured's failure to answer material questions at examination under oath voided the insurance contract].)

The Wesslers assert that tolling in the present situation is consistent with the principles articulated in *Prudential, supra,* 51 Cal.3d 674; we disagree. The court in *Prudential* pointed out that equitable tolling was most frequently applied in California in cases where the plaintiff first filed a claim before an administrative agency and then filed a claim in the court. In such situations, "courts have held the policy underlying the statute of limitations—prompt notice to permit complete and adequate defense—has been satisfied and that the period should be tolled in equity to preserve the plaintiff's claim. [Citations.] [¶] One commentator has called it 'unconscionable' to permit the limitation period to run while the insured is pursuing its rights in the claims process." (*Id.* at p. 690.)

Here, the Wesslers were not pursuing their rights but were refusing to provide information relevant to Mid-Century's investigation of their claim. The Wesslers argue that they were forced to choose between cooperating with Mid-Century or asserting their Fifth Amendment rights,[4] but we reject this claim. As Mid-Century points out in its brief, the Wesslers could have filed their lawsuit and then sought a stay or protective order to

---

[4] Mid-Century argues that the Wesslers' lack of cooperation went beyond asserting their Fifth Amendment rights, as they refused to submit a proof of loss form.

11

prevent Mid-Century from being able to compel them to disclose incriminating information while the criminal action was pending or they could have asserted their Fifth Amendment rights in response to discovery. More significantly, our Supreme Court has clearly stated that a claimant must comply with an insurance policy's requirement to submit to an examination under oath and is not justified in invoking his or her Fifth Amendment right against self-incrimination because of pending criminal charges against the claimant. (*Brizuela v. CalFarm Ins. Co., supra,* 116 Cal.App.4th at p. 587, citing *Hickman*, *supra*, 184 Cal. at p. 534.) Tolling the statute of limitations during a criminal investigation of the claimant is contrary to the Supreme Court's holding in *Hickman*.

The rationale for tolling underlying *Prudential, supra,* 51 Cal.3d 674 does not apply here. The court in *Prudential* emphasized that tolling during the insurance company's investigation of the claim facilitates the effective functioning of the claims process by not requiring the insured to sue prior to the completion of the insurance company's investigation and requiring the insurance company to investigate "without later invoking a technical rule that often results in an unfair forfeiture of policy benefits[.]" (*Id.* at p. 692.) Tolling in this situation furthers the "policy of encouraging settlement between insurers and insureds . . . ." (*Ibid.*) In contrast, the tolling rule advocated by the Wesslers would bring the entire process to a halt, and would hamper the insurance company's ability to garner all the relevant information. (See *Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 141-142 [policy reasons for equitable tolling includes encouraging the insurer's diligent investigation].)

Finally, this is not a situation where fundamental fairness favors the Wesslers. They were repeatedly apprised of the one-year statute of limitations. They had decided by April 2012, which was within the statute of limitations period, that they were going to pursue legal action against Mid-Century. This is a situation where the claimants were dilatory; they waited until after the statute of limitations had expired to file their lawsuit. This case does not warrant applying a second period of equitable tolling.

The statute of limitations bars the Wesslers' breach of contract claim. The Wesslers' second cause of action for declaratory relief sought a judicial determination of

12

their rights under the policy. Since it was derivative of the breach of contract cause of action, the trial court correctly granted summary judgment against this cause of action.[5] Accordingly, we affirm the trial court's grant of summary judgment against the Wesslers' complaint.[6]

## DISPOSITION

The judgment is affirmed. The Wesslers are to pay the costs of appeal

_____
Kline, P.J.

We concur:

_____
Stewart, J.

_____
Miller, J.

_____

[5] The Wesslers contend that the trial court erred because it ruled that even if the statute of limitations were tolled, the Wesslers would not have been covered because the policy excluded coverage for loss or damage from a criminal act committed by or at the direction of any insured. The Wesslers assert that this statement is incorrect because the criminal act exclusion had to be a felony and Richard pled no contest to a misdemeanor.

We need not consider whether the exclusion in the policy applied to felonies and not misdemeanors because the trial court correctly found that the statute of limitations barred the Wesslers' claims. (See fn. 1, *ante*.) An appellate court will sustain a summary judgment if the trial court's decision is " ' "right upon any theory of the law applicable to the case[,] regardless of the considerations which may have moved the trial court to its" ' " ruling. (See *Folberg v. Clara G.R. Kinney Co.* (1980) 104 Cal.App.3d 136, 140.)

[6] We need not address Mid-Century's argument that an independent basis for affirming the summary judgment is that the Wesslers materially failed to cooperate in Mid-Century's investigation of their claim, which was a condition precedent.

13