Filed 8/2/21  Krueger v. CSAA Insurance Services CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEBRA LYNN KRUEGER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CSAA INSURANCE SERVICES, INC.,<br><br>Defendant and Respondent. | F078470<br><br>(Super. Ct. No. 16CECG03394)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Debra Lynn Krueger, in pro. per., for Plaintiff and Appellant.

Coddington, Hicks & Danforth, Hyon M. Kientzy and Min K. Kang, for Defendant and Respondent.

-ooOoo-

Plaintiff and appellant Debra Lynn Krueger (Krueger) sued her homeowner's insurer, defendant and respondent CSAA Insurance Services, Inc. (CSAA),[1] for breach of

---

[1]     Krueger's complaint named "CSAA Insurance Services, L.L.C." as defendant. CSAA filed its answer as "CSAA Insurance Services, Inc."  During the relevant policy period, CSAA was known as "AAA Northern California, Nevada & Utah Insurance Exchange," and subsequently changed its name.  This name change is not relevant to the

contract, breach of the implied covenant of good faith and fair dealing, and for unfair claims settlement practices. The trial court granted CSAA's motion for summary judgment (MSJ) on the basis that Krueger's lawsuit against CSAA had been filed beyond the one-year limitation period specified by CSAA's policy of insurance (the Policy), and denied Krueger's own MSJ as moot at that point. Krueger appeals from the summary judgment granted in favor of CSAA. Finding the trial court both properly granted CSAA's MSJ and denied Krueger's MSJ as moot, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Krueger owned a residence in Fresno, California (the Insured Property), that was insured during the period of November 10, 2012, to November 10, 2013, by the Policy (specifically, CSAA homeowner's policy No. HO-XE-88-55-2). On July 10, 2013, Krueger reported claim No. 02-XE8855-2 under the Policy (the First Claim), after a water leak from a rooftop-mounted swamp cooler resulted in a bedroom ceiling collapse and mold damage to the Insured Property. Following an inspection of the damage, CSAA paid Krueger the Policy's $10,000 mold limit and on July 23, 2013, denied the remainder of Krueger's claim, which CSAA attributed to deferred maintenance. CSAA's July 23, 2013, coverage letter contained a notification of the Policy's one-year limitation period on any lawsuit Krueger intended to bring against CSAA arising out of its handling of the insurance claim. The Policy's limitation provision read as follows:

**"SECTION I – CONDITIONS** [¶] … [¶]

"8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage."

On August 5, 2013, Krueger made a second water loss and mold growth claim to CSAA regarding the Insured Property, claim No. 03-XE8855-2 (the Second Claim). An

underlying litigation or the instant appeal, and the respondent is therefore consistently referred to herein as "CSAA."

2.

inspection of the Insured Property, conducted at CSAA's behest on or about August 9, 2013, resulted in CSAA determining the loss underlying the Second Claim was caused by a toilet tank overflowing due to a stuck valve, which CSAA attributed to deferred maintenance. CSAA paid Krueger for the aspects of the Second Claim it regarded as covered under the Policy, less the applicable deductible.[2] On August 20, 2013, CSAA sent out a coverage letter to Krueger regarding the remaining elements of the Second Claim. The August 20, 2013, coverage letter contained another citation to the Policy's one-year limitation period for suits arising out of the claim. Specifically, CSAA's August 20, 2013, coverage letter stated: "Further, your policy provides under **SECTION I - CONDITIONS**, item 8, **Suit Against Us**, that no action shall be brought against us unless there has been compliance with the policy provisions and the action is filed in a court of competent jurisdiction within one year of the date of this letter."

On September 27, 2013, CSAA sent Krueger another coverage letter in response to Krueger's request for additional policy funds related to the First Claim. CSAA's September 27, 2013 letter denied Krueger's request for further payment for mold-related losses on the ground that Krueger had at that point already exceeded the Policy's mold limit by over $1,000.

The Insured Property sustained a structural fire at some point in late 2014, after the First and Second Claims. On December 3, 2014, the City of Fresno notified Krueger by letter that the Insured Property had recently been inspected by the "Code Enforcement Division" and was found to have violations of the Fresno County Municipal Code, which violations were deemed to create "a public nuisance immediately dangerous to life, health and public safety."

---

[2]    CSAA ultimately also refunded Krueger's deductible under the first claim, as the mold remediation costs eventually exceeded the Policy's mold coverage limit.

3.

Over three years later, on October 20, 2016, Krueger filed an initial complaint for breach of contract and insurance bad faith against CSAA.[3] On February 7, 2017, the trial court granted CSAA's demurrer to this complaint, with leave to amend.

On March 22, 2017, Krueger filed her second amended complaint (SAC) against CSAA, stating three causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claims settlement practices. In the SAC, Krueger asserted that she was excused from the Policy's one-year limitation period on lawsuits by virtue of the application of Business and Professions Code section 7199.[4]

On June 6, 2017, CSAA filed its answer and asserted, among its affirmative defenses to Krueger's SAC, the Policy's one-year limitation period on lawsuits.

On May 30, 2018, CSAA filed its MSJ regarding Krueger's SAC (and in the alternative a motion for summary adjudication, or partial summary judgment).

On August 9, 2018, Krueger filed various unconventionally styled documents in response to CSAA's MSJ. Included among Krueger's filings was a "REQUEST FOR A SUMMARY JUDGMENT," which the trial court handled as an MSJ. Notably absent from Krueger's filings were a formal opposition to CSAA's MSJ and any proper objections by Krueger to the evidence CSAA had offered in support of its MSJ.

On August 20, 2018, the trial court issued its tentative ruling regarding both parties' MSJ's, granting CSAA's and denying Krueger's.

---

[3]     It also appears from the record that Krueger sent at least one letter of complaint to the California State Department of Insurance (DOI) on or about November 9, 2015, regarding CSAA's handling of her First and Second Claims. Ultimately, after reviewing the information provided, the DOI indicated to Krueger that it could offer no assistance to her.

[4]     That section provides that "[t]he time for commencement of a legal action for breach of duty arising from a home inspection report shall not exceed four years from the date of the inspection." (Bus. & Prof. Code, § 7199.)

The MSJ's proceeded to hearing on August 23, 2018, with both CSAA and Krueger presenting evidence and argument in support of their respective motions.

On August 23, 2018, the trial court issued its ruling granting CSAA's MSJ on the basis that Krueger's lawsuit against CSAA was untimely. In its ruling, the trial court found that the untimeliness of Krueger's lawsuit disposed of the need to address the other issues raised in CSAA's MSJ, and also rendered Krueger's own MSJ moot. The trial court noted that in its view, the Policy's one-year suit limitation provision was valid and conspicuous, and that Krueger had been specifically apprised of that limitation period in each of CSAA's coverage letters.

On October 16, 2018, Krueger filed a motion for reconsideration of the trial court's rulings on the mutual MSJ's, which was denied on October 24, 2018. Krueger filed her timely notice of appeal of order granting CSAA's MSJ.

## DISCUSSION

Krueger contends that the record in the instant case reveals that the trial court improperly granted CSAA's MSJ and did not properly consider her own MSJ. Krueger's appellate pleadings are not entirely comprehensible, but as best as can be discerned from them, Krueger fundamentally contends that the Policy's one-year limitation period was either vitiated by operation of the delayed discovery rule due to CSAA's alleged concealment of material facts from Krueger, or by operation of the equitable doctrines of estoppel and waiver.

## I. APPLICABLE LAW AND STANDARD OF REVIEW

### *Motions for Summary Judgment*

In this case, the fundamental question presented—whether the trial court properly granted CSAA's MSJ—is a question of law. We review pure questions of law de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860; *Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108.)

An MSJ shall be granted where there is no triable issue of any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c);[5] *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) "A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action." (*Blue Shield of Cal. Life & Health Ins. Co. v. Superior Ct.* (2011) 192 Cal.App.4th 727, 732.) "If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense." (*Ibid.*) The plaintiff must produce admissible evidence to show that a triable issue of material fact exists in order to overcome a showing that one or more elements of the cause of action cannot be established. (§ 437c, subd. (p)(2); *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72.)

When the losing party appeals, the trial court's judgment is presumed to be correct, and the appellant bears the burden to affirmatively demonstrate prejudicial error. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [" '[t]he *burden is on the appellant*, not alone to show error, but to show *injury* from the error' "].) The ultimate consideration is not whether the trial court's stated reasoning was correct, but rather whether its ruling was correct. (*Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 966–967.) "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v.*

---

[5] All statutory references are to the Code of Civil Procedure unless otherwise noted.

*Southern Pacific Co.* (1897) 116 Cal. 325, 329.)  We must affirm the trial court's ruling if there is any basis in the record for doing so.  (*Maryland Casualty Co.*, *supra,* at p. 966.)

As the appellant, Krueger bears the burden of proof of establishing her asserted errors on appeal.  (Evid. Code, § 500; *Barrie v. California Coastal Com.* (1987) 196 Cal.App.3d 8, 16.)

In reviewing a grant of summary judgment, an appellate court independently reviews the record that was before the trial court and accepts as undisputed those portions of the moving party's evidence that are not contradicted by the opposing party's evidence.  (*A-H Plating, Inc. v. American National Fire Ins. Co.* (1997) 57 Cal.App.4th 427, 433–434.)

### *Statutes of Limitations and Contractual Limitation Periods*

Statutes of limitations prescribe the length of time a plaintiff is given to bring suit and thereafter be barred from doing so.  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)  Generally, the limitation period "runs from the moment a claim accrues."  (*Ibid.*; § 312 [action must be "commenced within the periods prescribed in this title, after the cause of action shall have accrued"].)  California follows the "last element" accrual rule, which provides that the limitation period runs from the occurrence of the last element essential to the cause of action.  (*Aryeh, supra,* at p. 1191.)  Our Supreme Court has described the essential elements for statute of limitations purposes as " 'wrongdoing, harm, and causation.' "  (*Ibid.*)  The foregoing general rules are subject to various modifications and equitable exemptions that affect the initial accrual of a cause of action, the subsequent running of the limitation period, or both.  (*Id.* at p. 1192.)  These exemptions and modifications include the delayed discovery rule, equitable tolling, equitable estoppel, the continuing violation doctrine, the theory of continuous accrual, and waiver.  (*Ibid.*)  In this case, Krueger relied on the delayed discovery rule, equitable estoppel, and waiver as exemptions to her otherwise required compliance with the Policy's one-year limitation period.

7.

Several policies underlie statutes of limitations, including giving defendants reasonable repose, which protects parties from defending stale claims, and stimulating plaintiffs to pursue their claims diligently. (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 911.) Additionally, statutes of limitations promote efficiency, conserve judicial resources, increase the accuracy of judgments by promoting the resolution of disputes while the record is fresh, and aid the entry of final judgments within a reasonable time. (*Day v. McDonough* (2006) 547 U.S. 198, 205–206.)

The covenant of good faith and fair dealing, which Krueger's complaint alleges CSAA violated, is implied by law in every contract, and exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349.)

Further, as in this case, the parties to a contract may agree to a contractual suit limitation period that, although not statutory, is supported by the same policies underlying statutes of limitations. Indeed, a one-year limitation period on insurance actions has long been recognized as valid in California. (E.g., *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 682 (*Prudential-LMI*); *Fageol T. & C. Co. v. Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753; *Jang v. State Farm Fire & Casualty Co.* (2000) 80 Cal.App.4th 1291, 1296.) "Such a covenant shortening the period of limitations is a valid provision of an insurance contract and cannot be ignored with impunity as long as the limitation is not so unreasonable as to show imposition or undue advantage. One year was not an unfair period of limitation." (*Fageol*, *supra,* at p. 753.) A one-year suit limitation provision is in fact the standard, default term in standard form fire insurance policies. (Ins. Code, § 2071.)

### Delayed Discovery Rule

The delayed discovery rule postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) Thus, a limitation period begins to run when

8.

the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have uncovered a factual basis for the particular cause of action.  (*Id.* at p. 803.)

### *Equitable Tolling*

Equitable tolling is a judge-made doctrine that operates independently of the literal wording of the Code of Civil Procedure to "suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness."  (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 (*Lantzy*).)  The one-year limitation period to sue on casualty insurance policies such as the one at issue here begins running upon "inception of the loss," but is equitably tolled from timely notice of loss until the insurer denies the claim.  (*Prudential-LMI*, *supra*, 51 Cal.3d at pp. 687–693.)

In *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917 (*Collier*), the Second District stated the three core elements of equitable tolling are "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim."  (*Id.* at p. 924.)  The *Collier* court noted "[i]t is not altogether clear whether the Supreme Court would insist on all three prerequisites."  (*Id.* at p. 924, fn. 5.)  The *Collier* court further stated that equitable tolling is based on the rationale that "a plaintiff should not be barred by a statute of limitations unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed."  (*Id.* at p. 923.)

The effect of equitable tolling is that the limitation period stops running during the tolling event, and begins to run again only when the tolling event has concluded.  (*Lantzy*, *supra*, 31 Cal.4th at p. 370.)  Consequently, the tolled interval, no matter when it took place, is "tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time which the tolling event previously occurred."  (*Id.* at pp. 370–371.)

9.

Generally, whether the elements for equitable tolling have been satisfied presents questions of fact. (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 745 [equitable tolling presents questions of fact].) These questions of fact involving the elements of equitable tolling are not presented to the jury. Rather, the trial court is the proper trier of fact to decide whether a limitation period has been equitably tolled. (*Id.* at pp. 745–746.)

*Equitable Estoppel*

Equitable estoppel " 'arises as a result of some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action.' " (*Prudential-LMI*, *supra*, 51 Cal.3d at pp. 689–690.) It overcomes the statute of limitations affirmative defense to an admittedly untimely action. (*Cordova v. 21ˢᵗ Century Ins. Co.* (2005) 129 Cal.App.4th 89, 96.) The existence of the factual elements of equitable estoppel may be decided as a matter of law "when the undisputed evidence is susceptible of only one reasonable inference." (*Santos v. Los Angeles Unified School Dist.* (2017) 17 Cal.App.5th 1065, 1076.)

Equitable estoppel arises only after a limitation period has run, and " ' " 'takes its life … from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice." ' " ' (*Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, fn. 3.)

Equitable tolling and equitable estoppel are distinct doctrines. Tolling is concerned with the point at which the limitation period begins to run and with the circumstances in which the running of the limitation period may be suspended. (*Lantzy*, *supra*, 31 Cal.4th at p. 383.) Equitable estoppel comes into play only after the limitation period has run and addresses the circumstances in which a party will be estopped from asserting the statute of limitations defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitation period. (*Ibid.*)

II.     ANALYSIS

### Sufficiency of the Record and Briefs on Appeal

Before analyzing these issues as they pertain to this case, we must begin by addressing the threshold issue of appellant's failure to provide an adequate record and properly supported briefs.

An appellant must provide a sufficient record to enable the reviewing court to analyze the appellant's contentions. (Cal. Rules of Court, rule 8.124(b)(1)(B).)

Thus, if an appellant intends to raise any issue that requires consideration of the oral proceedings in the trial court, the record on appeal must include a record of those oral proceedings in the form of a reporter's transcript, an agreed statement, or a settled statement. (Cal. Rules of Court, rule 8.120(b)(1)–(3).)

Further, briefs must provide argument and legal authority for the positions taken; they may not rely upon matters which are not part of the record on appeal. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.) Without the proper record, we cannot evaluate issues requiring a factual analysis and we presume the evidence is sufficient to support the judgment. (*Ibid.*; *Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1102 [without proper record, evidence conclusively presumed to support the judgment].)

Moreover, contentions based upon uncited assertions are forfeited on appeal. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn. 1 [contentions forfeited when there is failure to support them with legal argument and citations to authority]; *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282–283 [argument of counsel is insufficient; briefs must contain factual underpinning, record references, argument, and authority]; *County of Los Angeles v. Surety Ins. Co.* (1984) 152 Cal.App.3d 16, 23 [sufficiency of evidence claims cannot be reviewed from clerk's transcript and exhibits].)

Here, Krueger's briefs and record on appeal are in many respects inadequate to competently evaluate the issues Krueger has asserted on appeal. While voluminous, the

record and pleadings are not always focused or germane. Most of Krueger's numerous factual assertions are not germane to the fundamental issue on appeal—was there prejudicial error in the trial court's granting of CSAA's MSJ? Moreover, Krueger has suffused her briefs with myriad references to facts that do not otherwise appear in the actual record of this case, without citations to the underlying documentary record. Such factual contentions are not judicially cognizable here. (*In re Hochberg* (1970) 2 Cal.3d 870, 875 [reviewing court limited to matters contained in record and not those suggested in briefs]; *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [on appeal party must provide page citations to record].) Thus, improperly raised issues predicated on such baseless assertions may be deemed forfeited. (*Pringle v. La Chapelle*, *supra*, 73 Cal.App.4th at p. 1003; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 [we cannot evaluate contentions absent transcript or settled statement; party challenging judgment has burden to show reversible error].) Further, appellate courts are not required to search the record on appeal seeking errors sua sponte. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) In this case, Krueger has failed to provide a sufficient record to enable us to fully analyze all of her contentions. We therefore need not reach such unsubstantiated contentions on Krueger's part, as they are properly deemed forfeited on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Even if Krueger's arguments were not forfeited on appeal, we conclude they lack merit, for the reasons explained below.

### *Motions for Summary Judgment*

MSJ's and oppositions thereto are evidence based. In particular, oppositions like the one Krueger made to CSAA's MSJ "shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (§ 437c, subd. (b)(2).) Krueger did not formally file an opposition to CSAA's MSJ; however, the trial court charitably considered the evidence

submitted by Krueger in support of her own MSJ to address the sufficiency of Krueger's proffered evidence to raise a triable issue of material fact as against CSAA's MSJ.[6]

The trial court, giving Krueger the benefit of every reasonable doubt, generously construed the hybrid pleading she filed in response to CSAA's MSJ as a valid opposition (i.e., as though it had the required separate statement), and evaluated Krueger's opposition accordingly. Ultimately, however, Krueger never produced any admissible evidence or coherent argument showing that a triable issue of fact existed that would overcome CSAA's contentions in its MSJ.[7] By way of contrast, CSAA provided the trial court with a proper request for judicial notice in support of its MSJ, a 38-page objection to Krueger's evidence "IN SUPPORT OF MOTION FOR COURT ORDERED SUMMARY JUDGMENT," a 49-page reply separate statement of undisputed material facts, as well as a 45-page objection to Krueger's evidence in support of her opposition to CSAA's MSJ. CSAA also filed a 71-page response to Krueger's ostensible "ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION" to CSAA's MSJ. Viewed in this light, the court's grant of CSAA's MSJ

---

[6] Krueger's August 7, 2018 "SUBMISSION OF STATEMENT OF UNDISPUTED FACTS IN OBJECTION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT/ADJUDICATION" had virtually no judicially cognizable documentation. On September 4, 2018, Krueger filed a document styled "PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS AND PROPOSED ORDER FOR SUMMARY JUDGMENT/ADJUDICATION," but this filing occurred after the trial court's decisions on the MSJ's were announced and confirmed, and did not conform in either format or substance with a proper separate statement of undisputed material facts.

[7] By way of example, on August 8, 2018, and August 13, 2018, Krueger filed with the trial court requests for judicial notice for numerous documents that were not proper subjects of judicial notice. Rather, the documents in question should have had supporting declarations to lay the foundation for the admission of each into evidence, but Krueger provided no such declarations. Nevertheless, it appears the trial court considered even these improvidently presented materials in reaching its decisions on the parties' respective MSJ's.

13.

was well within the bounds of propriety, and its solicitous treatment of Krueger was nothing less than magnanimous.

### The Policy's One-Year Limitation Period

Krueger herself acknowledges that she was aware of the Policy's one-year-to-sue provision, and that she did not comply with it. Krueger's very use of the term "excused" in reference to the time of her filing of her lawsuit against CSAA is an admission on her part that she did not comply with the Policy's one-year suit limitation period. In basic terms, the law of limitations of actions "is the product of interplay between two competing sets of policies: those supporting the extinguishment of untimely claims and those encouraging the resolution of all claims, whether timely or untimely, on their substantive merits." (Ochoa & Wistrich, *The Puzzling Purposes of the Statutes of Limitation* (1997) 28 Pacific L.J. 453, 454–455.)

As the trial court correctly noted, the Policy's one-year limitation on actions relating to claims made pursuant to the Policy has long been recognized as valid and common in California. (See, e.g., *Prudential-LMI*, *supra,* 51 Cal.3d at p. 682; *Jang v. State Farm Fire & Cas. Co.*, *supra*, 80 Cal.App.4th at p. 1296.) As the trial court also correctly noted, when a court is reviewing claims made under an insurance policy, it must hold the insured bound by clear and conspicuous provisions in the policy, even if evidence suggests that the insured did not read or understand them. (*Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1, 14–15.) Here, not only is the Policy's one-year limitation provision clear and conspicuous, there is no evidence in the record before us, and no argument is made by Krueger on appeal, that she did not read or understand the Policy's one-year lawsuit limitation provision, or that she did not read or understand the July 23, 2013 and August 20, 2013 coverage position letters that CSAA sent her regarding the First and Second Claims, each of which reiterated the one-year suit provision of the Policy (and each of which commenced the announced one-year suit limitation period for each claim). Therefore, there is no basis to disturb the trial court's

determination that Krueger had proven no valid reason to deny CSAA's MSJ (based on an assertion of untimeliness).

Moreover, Krueger's own assertions fundamentally undermine her statute of limitations arguments. For example, she claims that she "was unaware of any material facts that would state a Cause of Action against RESPONDENT until 11/19/2014 when her house was condemned by the City of Fresno Building and Code Enforcement Division as 'substandard and unsafe housing' after she had suffered two perils the year prior (2013) when she had an active Homeowner's Insurance Policy with RESPONDENT, Policy No. HO-XE8855-2." Even if Krueger's assertion in this regard were to be taken at face value (leaving aside the lack of any established connection between the municipal inspection of her home and the decisions and actions of CSAA in adjusting the First and Second Claims, and/or the effects of the intervening structural fire on the Insured Property's habitability), her causes of action against CSAA would have accrued on November 19, 2014, which was still more than a year prior to October 20, 2016, the date on which Krueger filed her lawsuit against CSAA.

Further, Krueger's assertion that "the suppression of the material fact that hazardous levels of friable asbestos particles was the material fact which respondent suppressed from appellant and she was not aware of until a public adjuster she contracted with discovered it and informed her of his discovery on 01/20/2015" (unnecessary capitalization omitted) is not helpful to her cause. Aside from the lack of competent evidence that CSAA was aware of any "hazardous levels of friable asbestos" in the Insured Property as of August 20, 2013, if Krueger's assertion in this regard is accepted as true, her cause of action against CSAA would have accrued as of January 20, 2015, giving her one year from that date (i.e., until January 20, 2016) to file her bad faith complaint against CSAA. Krueger, however, did not file against CSAA until October 20, 2016. By Krueger's own narrative of events, then, her basic timeliness arguments fail.

15.

*Delayed discovery*

While not precisely focused, the gravamen of Krueger's argument that the delayed discovery doctrine is applicable in this case seems to be her contention that her causes of action against CSAA for its handling of her homeowner's claims did not accrue until she became aware of the presence of asbestos in the Insured Property. Krueger asserts that this information was not known to her until the November 19, 2014 inspection of the Insured Property by the City of Fresno. However, Krueger establishes no factual or legal connection between the presence of asbestos at the Insured Property in 2014 and CSAA's handling of Krueger's water damage claims in 2013.[8] Krueger argues extensively on this point, but mere argument is neither fact nor law. There is no evidence in the record that either Krueger's First or Second Claim had anything to do with asbestos. There was no charging allegation in Krueger's SAC that causally linked any damages she asserted she sustained to the presence of asbestos at the Insured Property (e.g., no evidence that Krueger developed mesothelioma attributable to friable asbestos at the Insured Property, etc.). Consequently, the point in time at which Krueger claims she became aware of the presence of such asbestos in the Insured Property is of no import to when she needed to file any bad faith claim against CSAA. The quantity of Krueger's argument on this point notwithstanding, the record is bereft of any judicially cognizable facts that would make application of the delayed discovery doctrine appropriate in the underlying circumstances.

Further undermining Krueger's arguments in this regard is the presence in the record she herself submitted to the trial court of a March 25, 2015 letter from Absolute

---

**8** Prior to its deliberations on the parties' MSJ's, Krueger herself presented the trial court with a July 30, 2013 asbestos air clearance report from the SierraWest Group, prepared on behalf of CSAA, which report indicated that testing performed at the Insured Property on July 26, 2013 (following an asbestos abatement project there) met relevant recommended final air clearance levels for friable asbestos.

16.

Public Adjusters to Krueger, indicating that Absolute Public Adjusters had by that time "spoken with 6 different Attorneys to take on your 3 cases however none of them would agree to do so." If nothing else, this correspondence shows that Krueger was contemplating litigation against CSAA over its handling of her First and Second Claims as far back as March 2015 (i.e., more than 18 months before the date she actually filed suit against CSAA), though March 2015 was still more than a year after CSAA denied her claims. Krueger offers no explanation or justification on appeal for that continuing delay in her filing.

*Equitable tolling*

Krueger argues the Policy's suit limitation period should be equitably tolled. "As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the … limitations statute." (*Addison v. State of California* (1978) 21 Cal.3d 313, 321.) Moreover, equitable tolling should not apply if it is "inconsistent with the relevant statute." (*United States v. Beggerly* (1998) 524 U.S. 38, 48.)

We give a broad reading to the elements of California's equitable tolling doctrine, based on the policy considerations underlying the doctrine, and conclude tolling of the Policy's limitation period is not appropriate on the circumstances of this case.

Because Krueger has never shown a justifiable reason for her more-than-three-year delay in bringing her bad faith claims against CSAA, she has not engaged in the "good faith and reasonable conduct by the plaintiff in filing the second claim" that the doctrine of equitable tolling requires. (*Collier*, *supra*, 142 Cal.App.3d at p. 924.) Moreover, Krueger has never demonstrated with competent evidence why the important public interest in having a one-year standard, specified, and agreed-upon limitation period to bring suit against CSAA should or must yield on the facts of this case to Krueger's interest in being able to sue CSAA over its alleged bad faith after more than

three times the limitation period had passed.  Krueger offers no persuasive justification for that delay.

### *Equitable estoppel*

Krueger argues that CSAA's conduct influenced how and when her complaint against CSAA was presented to the trial court, and that CSAA is therefore estopped from asserting a statute of limitations defense.  Krueger asserts that "[t]he suppression of the material fact that hazardous levels of friable asbestos particles was the material fact which [CSAA] suppressed from [Krueger] and she was not aware of until a public adjuster she contracted with discovered it and informed her of his discovery on 1/20/2015.  This was an act of concealment, which is an act of fraud pursuant to California Civil Code 330."  (Unnecessary capitalization omitted.)  However, despite her voluminous filings, Krueger has not shown how any delayed knowledge on her part regarding asbestos in the Insured Property affected the filing of her lawsuit against CSAA contesting CSAA's handling of her homeowner's claims.

The undisputed facts establish that Krueger had been apprised in writing by CSAA of CSAA's partial denial of both the First and Second Claims on July 23, 2013, and August 20, 2013, respectively.  It is also undisputed that asbestos was never an issue of expressed concern in either the First or Second Claim; rather, water damage and mold growth were.  Despite extended argument in her briefing, Krueger has articulated no actual material facts regarding her claims handling allegations against CSAA that she did not possess at the time of her receipt of the coverage letters (i.e., by August 20, 2013).  While Krueger spends a great deal of her briefing raising various factual allegations about CSAA not providing her with information about friable asbestos being present in her residence, Krueger provides no evidence (nor even fully formed argument) that CSAA knowingly concealed from her information about friable asbestos levels in the Insured Property at the time of the adjustment of her homeowner's claims, or how the

18.

alleged presence of such asbestos in the Insured Property is the fault of CSAA and has caused Krueger specific injury.

Therefore, CSAA was not equitably estopped from asserting the running of the Policy's one-year limitation period. Krueger's lawsuit against CSAA was thus not timely, being filed more than three years after Krueger's receipt of the last of CSAA's coverage letters. The trial court's determinations in this regard were proper.

*Krueger's Other Contentions*

Krueger's appeal raises various other contentions that either misstate the law, betray a misunderstanding of the law, or lack proper citations to the factual record, and fail to provide any adequate bases upon which to disturb the trial court's rulings on the MSJ's.

Krueger's contentions that CSAA's answer to the operative complaint "did not state any material facts to warrant a defense with merit against the complaint to constitute a triable issue of fact and had technically defaulted" and that CSAA "has not met [its] burden of proof to state sufficient acts to constitute a triable issue of material fact in answer to the statements of fact in the causes of action in the SAC" are nonsensical. (Unnecessary capitalization omitted.) Answers to complaints need not raise triable issues of material fact, and answering parties bear no particular burden of proof in such pleadings.[9] MSJ's are only properly granted when no disputed issues of material fact exist with respect to a complainant's charging allegations, and one party or the other is thereby entitled to judgment as a matter of law. (§ 437c, subd. (c).) Krueger appears to be confounding these two distinct concepts, perhaps through a lack of understanding of

---

[9] While under section 446, subdivision (a), an answer to a complaint generally must be verified when the complaint itself is verified, verification is not the same as a burden of proof. Moreover, while Krueger's SAC was ostensibly filed "under penalty if [*sic*] perjury that they are true statements to the best of [Krueger's] knowledge," the pleading was unsigned by Krueger, and therefore was not properly verified, and should not be considered as such.

19.

the separate legal principles they animate. Answers and MSJ's are different legal instruments, with different purposes, burdens of proof, and implementation mechanisms. Krueger's assertions in this regard are more reflective of confusion and misunderstanding on her part regarding these differing legal instruments than any actual well-founded legal contentions concerning them. Further, by failing to file any objections to the evidence submitted to the trial court by CSAA in support of its MSJ, Krueger forfeited any objections to such evidence she might have otherwise made. (§ 437c, subd. (b)(5); *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 529–530.) Consequently, Krueger's assertions on these points are rejected.

Krueger's contention that "[CSAA] cannot enforce the one year statute of limitations contained within the policy provisions without first proving by a preponderance of evidence that [it] did not act negligently when [it] subcontracted with a contractor, 'DRI' and paid them directly for services to be performed at [the Insured Property], for a job or service that required an active license issued by the California State Contractor's Licensing Board" (unnecessary capitalization omitted) is likewise nonsensical, and is unsupported by any citations to legal authority. Krueger's misguided averments in this regard again reflect confusion and misunderstanding on her part with respect to legal concepts and principles. There is no threshold burden of proof on a party raising the statute of limitations affirmative defense to prove that it "did not act negligently." Krueger's lack of citation to statutory, regulatory, or decisional authority for the contrary proposition belies the fact that no such authority exists. Further, any deficiencies in CSAA's subcontractor's licensure or certification are irrelevant to whether CSAA had a basis to enforce its contractual suit limitation provision.

Krueger's contention that she is "excused" from the Policy's one-year limitation period pursuant to Business and Professions Code section 7199 is also misguided. That section provides that "[t]he time for commencement of a legal action for breach of duty arising from a home inspection report shall not exceed four years from the date of the

20.

inspection." (Bus. & Prof. Code, § 7199.) Krueger apparently construes the inspection of the Insured Property that was conducted by the City of Fresno's Building and Code Enforcement Division following a structural fire sustained (post-First and Second Claims) by the Insured Property as a "home inspection report" within the meaning of Business and Professions Code section 7199. Krueger is mistaken in this regard. The term "home inspection" is specifically defined for purposes of the Business and Professions Code by section 7195 thereof as "a noninvasive, physical examination, performed for a fee *in connection with a transfer, as defined in subdivision (e), of real property, of the mechanical, electrical or plumbing systems or the structural and essential components of a residential dwelling of one to four units designed to identify material defects in these systems, structures, and components.*" (Bus. & Prof. Code, § 7195, subd. (a)(1), italics added.) Simply put, there is no evidence that the City of Fresno's November 19, 2014 post-fire inspection of the Insured Property to determine its habitability was a "home inspection" as that term is defined for purposes of Business and Professions Code section 7199. Moreover, Krueger has provided no linkage between CSAA's adjustment of her homeowner's claims and the City of Fresno's condemnation of the Insured Property.

Further, even if the City of Fresno's November 19, 2014 habitability inspection were somehow construed as a "home inspection" as that term is defined by and used for purposes of Business and Professions Code section 7199, Krueger's prospective cause of action would not lie against CSAA because CSAA did not conduct such an inspection, nor did it have the inspection conducted on its behalf. The City of Fresno alone was responsible for the November 19, 2014 habitability inspection. Therefore, Business and Professions Code section 7199's four-year statute of limitations period is in no way applicable to the facts of the instant case.

Krueger's invocation of the three-year statute of limitations for fraud-based causes of action, as well as the two-year statute of limitations for negligent infliction of

21.

emotional distress are similarly misplaced. Krueger's SAC against CSAA (the subject of CSAA's MSJ and the trial court's ruling thereon) contained neither a fraud-based cause of action nor a cause of action for negligent infliction of emotional distress. The statutes of limitation for such causes of action are therefore irrelevant in this matter.

Krueger's arguments and pleadings in this matter, both at the trial and appellate levels, reflect a misunderstanding of many legal principles and rules, which is perhaps understandable given Krueger's status as a self-represented party. However, mere self-representation is not a ground for exceptionally lenient treatment.

III. CONCLUSION

There was no error in the trial court's granting of CSAA's MSJ. Krueger's complaints about CSAA's handling of her First and Second Claims were made approximately three years after CSAA's partial denial of those claims, in the teeth of the Policy's stated one-year lawsuit limitation period, and Krueger's reliance on the legal doctrines of delayed discovery, equitable tolling, and equitable estoppel are unavailing on the facts and circumstances of this case. Krueger's lawsuit against CSAA was untimely, and she has offered no sufficient excuse or justification for that untimeliness.

Taken as a whole, we believe the trial court's discussion and pronouncements concerning its review and consideration of CSAA's and Krueger's MSJ's demonstrate that the trial court properly considered both motions appropriately, as well as all evidence presented by the parties concerning them. Indeed, by all appearances Krueger received solicitous treatment from the trial court in this regard. Notwithstanding the fact that Krueger did not file a proper separate statement of undisputed material facts in support of her own MSJ, the trial court apparently construed the materials Krueger supplied in opposition to CSAA's MSJ as constituting such a separate statement, and gave Krueger the benefit of numerous doubts, as well as allowing filings well in excess of usual page limitations. Far from being error laden, the trial court's evaluation and decisions concerning the MSJ's were exemplary approaches to Krueger's often unfocused

22.

litigation.  Furthermore, the trial court's grant of CSAA's MSJ mooted Krueger's MSJ, since a finding that Krueger's complaint against CSAA was inexcusably untimely obviated any claims Krueger had in that regard, in whatever form they were raised.

For these reasons, the trial court's rulings on the CSAA's MSJ was factually, procedurally, and legally correct.

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.


FRANSON, J.

WE CONCUR:


HILL, P.J.


PEÑA, J.

23.